## Chicago & Alton R. R. Co. v. Joshua H. Williams.

1. CONTRIBUTORY NEGLIGENCE—*A Bar to a Recovery for Personal Injuries.*—For the plaintiff to recover for personal injuries in a railroad accident it must appear that he was in the exercise of ordinary care at the time of the accident. Although the evidence may show that the defendant was guilty of negligence, if it appears that the plaintiff's negligence concurred in producing the injury, there can be no recovery.

Action in Case, for personal injuries. Appeal from the Circuit Court of Logan County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the November term, 1899. Reversed. Opinion filed February 27, 1900.

BLINN & HARRIS, attorneys for appellant.

BEACH & HODNETT, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an appeal from a judgment of $5,000, which appellee recovered against appellant in a suit for injuries caused by a train colliding with a wagon in which appellee was attempting to cross appellant's railroad track at a street crossing in Lincoln, Illinois.

The circumstances under which appellee received his injuries, as disclosed by the evidence, are as follows: Pulaski

street, in the city of Lincoln, runs east and west and intersects appellant's right of way at right angles. At that point appellant had three tracks: the main track in the center, and one side track on each side of the main track. The crossing is a prominent one, and at it appellant keeps a flagman. Sangamon street runs parallel with the railroad tracks, north and south, on the west side of the right of way, and intersects Pulaski street at right angles.

On the day of the accident, about three o'clock in the afternoon, appellee, driving north in a one-horse wagon, on Sangamon street, turned east on Pulaski street, where there was an engine, with three box cars attached, standing on the west side track south of and close to Pulaski street. At the same time there was coming from the south on the main track, a passenger train. The flagman, seeing the train, and that appellee was driving toward the track, unfurled a red flag, and, rushing out into the middle of Pulaski street by the east side track, waved it vigorously back and forth across his body at first, and then up and down. Appellee was at that time about thirty feet west of the west side track. He at first checked his horse and then struck him, starting him in a trot. A teamster, a few feet behind, called out to appellee not to cross. The flagman continued waving the flag and calling out to him to keep back. At the same time another man, who was standing close to the flagman, motioned with both hands to appellee not to cross, and called out several times for him to stay back. The engine on the west side track was making considerable noise, and appellant testified that he did not hear the call to keep back, nor the warning of the teamster behind him. He continued urging his horse over the crossing in the face of the signals of the flagman. After the horse had cleared the main track, the engine of the passenger train caught the wagon, appellee was thrown out, and sustained thereby serious and permanent injuries.

The seemingly reckless conduct of appellee can be accounted for only upon one or the other of the following theories: that he thought he could clear the crossing before the

passenger train reached there, or that he understood the flag-man's signal as being a warning against the freight engine standing on the west side track, or that he understood the signals of the flagman to be for him to come on instead of to keep back.

If he knew the passenger train was coming and under-took to cross over the tracks under the belief that he could do so before the train reached that point, his injuries are attributable to his own recklessness, and for them there is no right of recovery, of course.

If he knew nothing of the coming of the passenger train and mistook the signals of the flagman for signals to keep him back from the freight engine, the unfortunate conse-quences of his mistake should be borne by him and not by appellant. It was his duty to heed the signals and obey them, no matter how needless he may have regarded them. It is in evidence that upon a former trial of the case appel-lee testified that he understood the flagman's signals to be on account of the freight engine.

In his testimony upon the trial that we are now review-ing, he stated that he understood the signals of the flagman as signals for him to come on. If they were not, but, upon the contrary, were signals to keep back, appellant should not be held liable for the consequences of his misunder-standing them. There is no dispute about the signals that were given. They were given by an unfurled red flag in the hands of the flagman, at first by a horizontal motion and then vigorously by a perpendicular motion. The flag-man testified that they were the signals used to warn people approaching a crossing to keep back. He further testified that the signal to parties to pass over a crossing is made with the flag staff and the flag rolled up and over it.

It is a matter of common knowledge in the railroad busi-ness that the display of a red flag is a signal of danger, and when made by a flagman, waving it unfurled at a street crossing, that moving cars are approaching. When appellee saw the flagman waving a red flag as vigorously as the evidence shows was done in this case, common prudence

would seem to dictate that he remain in a place of safety until he should understand what it all meant.

There is a conflict in the testimony as to the speed of the train and as to whether the bell was rung or the whistle sounded as required by the statute. In the view which we take of the case, it is not necessary to discuss that conflict. It is a firmly established doctrine that for the plaintiff to recover in this kind of a case, it must appear that he was in the exercise of ordinary care at the time of the injury. Although the evidence may show that the defendant was guilty of negligence, if it appear that the plaintiff's negligence concurred in producing the injury, there can be no recovery. The Calumet Iron and Steel Company v. Martin, 115 Ill. 358; L. S. & M. Ry. Co. v. Hessions, 150 Ill. 546; N. C. S. R. R. Co. v. Eldridge, 151 Ill. 542; Chicago City Ry. Co. v. Dinsmore, 162 Ill. 658.

We feel that appellee was not in the exercise of that care which the law imposes, and that the judgment should be reversed but the cause not remanded. Judgment reversed.

**Finding of Facts** to be incorporated in the judgment:

We find that at the time the plaintiff below received the injuries complained of, he was not in the exercise of ordinary care for his own safety, that his own negligence materially concurred in causing his injuries, and that he has no cause of action against the defendant below.