Wabash Railroad Co. v. Kamradt.

---

### Wabash Railroad Co. v. Henry Kamradt, Adm'r.

1. RAILROADS—*Negligence, Where Injury is Caused Through Violation of Ordinance.*—A railroad inflicting an injury while violating a city ordinance as to the rate of speed while passing through the city, is guilty of negligence as a matter of law.

2. PRACTICE—*General Objection to Introduction of Ordinance Does Not Raise Question of Its Validity.*—A general objection to the introduction of an ordinance does not raise the question of its validity. This can only be done by specific objection upon that ground.

3. NEGLIGENCE—*What Constitutes a Prima Facie Case.*—The introduction of a city ordinance, proof of the violation thereof, the injury resulting therefrom and of due care on the part of the deceased, make out a *prima facie* case of negligence.

4. SAME—*When It Becomes a Question of Law.*—The question of negligence in each particular case may become a question of law, and come within the province of the court, so that a particular verdict may be directed, if the evidence in the case is such that all reasonable men would be agreed in their conclusions from it; and if the court can say that but one reasonable inference can be drawn from the facts, the court should act accordingly.

5. DUE CARE—*Burden of Proof upon Plaintiff.*—The burden of proof is upon the plaintiff to show due care.

6. SAME—*Plaintiff, to Recover, Must be in Exercise of, at Time of Injury.*—For the plaintiff to recover, it must appear that he was in the exercise of ordinary care at the time of the injury.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge presiding. Heard in this court at the May term, 1903. Reversed. Opinion filed August 28, 1903.

C. N. TRAVOUS, attorney for appellant; T. J. SMITH, of counsel.

RAY & DOBBINS, attorneys for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case, brought by appellee, as administrator, to recover damages for the death of Edward Kamradt, alleged to have resulted from the negligence of appellant.

The declaration consists of one count, and alleges in substance that defendant was operating a railroad extending through the village of Sadorus, in Champaign county, Illinois, and possessed of a locomotive engine and train of cars, not then and there exclusively used for the conveyance of passengers, which was under the management of divers servants, who were driving the same toward West street crossing in said village; that there was in force there a certain ordinance, section 1 of which provided that it should be unlawful for any railroad company to drive or propel along its railroad within the corporate limits, " cars or any hand car at any rate of speed exceeding the rate of six miles per hour, except trains exclusively used for the conveyance of passengers, which will be allowed to run within the corporate limits aforesaid at a rate of ten miles per hour; " that Edward Kamradt, on the 18th day of June, 1902, was riding in a wagon toward and over said crossing with all due care and diligence, and defendant by its servants caused said train and engine to be run at a higher rate

of speed than provided by said ordinance, to wit, at the rate of twenty-five miles per hour, and that no bell of at least thirty pounds weight, or steam whistle, was rung or whistled as required by the statute; by means of which negligence the engine collided with plaintiff's carriage, etc.

The jury returned a verdict for the plaintiff, and assessed the damages at $1,500. A motion for a new trial by defendant was overruled, and judgment entered upon the verdict. The defendant appeals to this court.

The material facts in the case are as follows: Appellant's railroad tracks run northeast and southwest through Sadorus. There are two tracks upon the right of way; a main track upon which the train in question was being operated, and a passing track, lying some twelve and one-half feet south of the main track.

West street, which is about sixty-six feet wide, approaches and crosses the railroad from the south at right angles, and extends in a general northern direction. It was the last crossing in the village from the east. Parallel to the railroad and about 100 feet south of it, another street runs east and west.

Deceased was riding in a wagon drawn by a pair of mules. The train in question approached the crossing from the east, and was a freight train consisting of sixty-four cars, twenty of which were loaded, drawn by a mogul engine.

As the deceased drove north toward the crossing, he was standing up in the wagon with his back toward the east, and looking away from the railroad, and this position he maintained until struck by the train.

A building occupied as an ice house and stable stood on the east side of West street, and adjoining defendant's right of way, and this with several trees and a hedge fence, obstructed the view to the east more or less, but there was a small space of not exceeding thirty or forty feet in width, through which a train might have been seen from the street if in line with this view. It does not appear, however, that deceased could have seen the train in question through this

opening, as he was behind the ice house before the train came into view through it. He drove along the west side of the street, and it is undisputed that after reaching a point some thirty-six feet south of the main track, he had an unobstructed view eastward along the right of way for a considerable distance, and from that point until he reached the main track there was nothing whatever to obstruct the view to the east.

The collision occurred about two o'clock in the afternoon on a clear day. Deceased was in his twenty-fourth year, in good health, and without any impairment to sight or hearing. The train was pulling up grade until it got near the crossing.

Appellant admits that the train was running through the village at the rate of twenty miles an hour. An ordinance of the village was introduced in evidence, over defendant's objection, which limits the speed of trains, except those used exclusively for the conveyance of passengers, to six miles per hour. Appellant was therefore guilty of negligence as a matter of law, if the ordinance was properly admitted in evidence. (R. R. Co. v. Mochell, 193 Ill. 208.)

Appellant contends that it was error to admit the ordinance in evidence for the reason that while the statute provides that "no ordinance shall limit the rate of speed in case of passenger trains to less than ten miles per hour, nor in other cases to less than six miles per hour," the ordinance in question purports to limit the speed of all trains, " excepting trains exclusively used for the conveyance of passengers, " to six miles an hour. Counsel insist that a train may be a passenger train, and still not be used exclusively for passengers, and that it was beyond the power of the village to adopt such an ordinance and that it is therefore void. The objection to the introduction of the ordinance in the court below was general, and did not raise the question of its validity. This can only be done by specific objection upon that ground. (R. R. Co. v. Lyons, 159 Ill. 576.) There was therefore no error in the admission of the ordinance in evidence.

The introduction of the ordinance in evidence, proof of the violation thereof, the injury resulting therefrom and of due care on the part of the deceased, would have made a *prima facie* case of negligence, which appellant would have been bound to overcome. (R. R. Co. v. Dunleavy, 129 Ill. 140; R. R. Co. v. Nowicki, 148 Ill. 29; R. R. Co. v. Hansen, 166 Ill. 623; R. R. Co. v. Ashline, 171 Ill. 314; R. R. Co. v. Beaver, 96 Ill. App. 558.) Appellant strenuously insists, however, that the evidence shows a want of due care on the part of the deceased. The burden was upon the plaintiff to show due care. Upon that question appellee's right to recover must depend, and we deem it the only one in the case, necessary to consider.

In the case of C. & A. R. R. Co. v. Williams (87 Ill. App. 511) we held:

"It is a firmly established doctrine that for the plaintiff to recover, it must appear that he was in the exercise of ordinary care at the time of the injury. Although the evidence may show that the defendant was guilty of negligence, if it appear that the plaintiff's negligence concurred in producing the injury, there can be no recovery." (Citing Steel Co. v. Martin, 115 Ill. 358; R. R. Co. v. Hessions, 150 Ill. 546; R. R. Co. v. Eldridge, 151 Ill. 542; R. R. Co. v. Dinsmore, 162 Ill. 658.)

The negligence of appellant as to running at an excessive rate of speed being established, the question as to whether the bell was rung and the whistle sounded as required by law becomes important only in determining whether thereby the deceased had or should have had warning of the approach of the train. Corwin O'Neil, called for plaintiff, testified that he heard the whistle sound when the train was about at the station; that he was about 100 to 180 feet from the railroad and had no difficulty in hearing the whistle. Morehouse, called for plaintiff, testified that when the train passed he was on the south side of Main street about forty feet from the track; that he heard the whistle and bell when the train was just east of the depot, but that he did not hear the bell or whistle after that.

Gedney, also called for the plaintiff, testified that he was about one hundred and sixty yards southwest from the depot; just happened to look up that way and saw the train approaching and heard it whistle and saw the steam; had no trouble in hearing it; the whistle could have been heard a mile or more away, if a person was listening for a whistle; it blew about two hundred yards east of the station; that he also heard the noise of the train as it went by; there was no difficulty in hearing the noise the train made; if a person was listening, or saw the train, they would naturally hear the noise it was making; that when he first heard the train, it was between three or four hundred yards away from him and that is when he first heard the noise of the train itself; that he had no difficulty in hearing it that distance.

Several of plaintiff's witnesses testified that they did not hear the signals, and one Lewis said that there was no bell or whistle sounded. The entire train crew, consisting of five persons, were called for the defendant and testified in substance that the whistle was blown for the station and all three crossings, the last time at least eighty rods east of the station; that the engine was equipped with an automatic bell operated by compressed air and that the ringing of the same was started before the train arrived at the village limits on the east and continued to ring until the train was stopped after the accident.

While the testimony is somewhat conflicting, we are satisfied that by far the greater weight of the evidence shows that the bell was continuously ringing from the time the train reached the village limits until after the accident, and that the whistle was sounded at the crossing as required by the statute.

The evidence discloses that while there were some obstructions to the view by the deceased until he came within thirty or forty feet of the track, that from that point on he could have seen the track for a quarter of a mile in the direction from which the train was approaching.

Sarah Burns, a witness called by plaintiff, testified that

when she first noticed the deceased he was about midway of her lot; that she looked for the train, thinking he was past where he could see, and thought she had better call to him and did so; that she could not say just where the train was at the time; that the deceased was in a wagon driving a mule team at a slow trot toward the crossing; the roads were dry and the wagon was rattling; that she was standing east of where he was; that she called to him and waved her bonnet to attract his attention, but he did not seem to hear her. He was standing up in the wagon, with his back toward her, so that she did not see his face at all; that he continued in that position until he passed behind the ice-house, but the wagon appeared to go faster; that she motioned and called to him as loud as she could, two or three times, but that he paid no attention; that she supposed he could have heard her that far or further if he had been listening.

J. F. Lewis, a witness called on behalf of the plaintiff, testified as follows:

" While I saw Kamradt he seemed to be looking rather south of west; more of an angle, really, than the railroad runs, which is about fifteen degrees, I think; I was in front of him, or, rather in front of his team, as he was facing west; could not describe the speed at which he was driving, because I was too near the front of his team; my farm machinery building is the one nearest the railroad track; both of my buildings front on this street, and are on the west side of it; from the track north the street turns a little to the east; the road Kamradt was on comes in there from due north; before I saw the train I had been in the hardware store, and had just come out when I saw it; was going to start over to my residence when I saw the smoke-stack, and about the same time saw Kamradt; think Kamradt was nearer to the crossing than the train was; perhaps the train was fifty feet further away, maybe more; there wasn't much difference; if the train had been further back I could not have seen it on account of obstructions; it was about one hundred and fifty to one hundred and seventy-five feet east of the crossing—that is, the engine was; could see Kamradt was moving along pretty well, but could not tell the gait; could not tell anything about their gait from

where I stood; Kamradt stood in his wagon with his back against the east side of the wagon-bed, looking off a little bit south of west, as near as I could tell; could not see exactly in his face, but as near as I could tell he was looking a little south of the line on which the railroad runs, a little bit south of west; in that position he could not see the train or the crossing; could not see the crossing, and of course he could not see the train coming from the east; his back was to the east, and he was looking a little away from the railroad; seeing that, I realized there was danger, and it caused me to rush forward and make those demonstrations—waving my hands, etc.; I tried to motion him back with my hand, but the collision came while I was making or trying to make the motions, and I did not get his eye at all; if he had looked toward the crossing there was nothing which would have prevented him seeing my signal before the train came to the crossing; the way was clear from him to me; he could have seen me as easily as I did him; could not say whether, if he had stopped when I first signaled him, there would have been no injury; could not tell exactly how close he was; when I first saw him he had not reached the main track; he had not reached the track on the south, the passing track, but was very close to it; do not know, if he had stopped at any point along there, whether he would have been safe, but that was my object in trying to stop him, and that was my judgment."

At the close of plaintiff's case, and again at the close of all the evidence, the defendant offered and asked the court to give peremptory instructions to the jury to return a verdict for the defendant, for the reason that the evidence showed a want of due care on the part of the deceased; but the court refused to give the instructions, and this action is assigned as error.

The cause and manner of the death of Kamradt being undisputed, the only question to be determined under the motions was whether, as a matter of law, the court could say that he was not in the exercise of ordinary care for his own safety.

While courts are not at liberty to say, as a matter of law, that one must conduct himself in a particular manner and observe a particular line of conduct in each case and under all circumstances (R. R. Co. v. Pollock, 195 Ill. 163), or

Wabash Railroad Co. v. Kamradt.

that a traveler is bound under all circumstances to look and listen before crossing a railroad (R. R. Co. v. Hansen, 166 Ill. 623; R. R. Co. v. Pearson, 184 Ill. 391), yet, as is said in the Hansen case, *supra*, " the question of negligence in each particular case may become a question of law, and come within the province of the court, so that a particular verdict may be directed, if the evidence in the case is such that all reasonable men would be agreed in their conclusions from it; and, if the court can say that but one reasonable inference can be drawn from the facts, the court should act accordingly." It was under these rules that the trial court was called upon to act upon the motion to direct a verdict.

The evidence shows that the deceased was fairly familiar with the crossing; that when within thirty-six feet south of the track, he had a clear view of the track for a quarter of a mile, in the direction from which the train was approaching; that the bell of the engine was ringing continuously and that a whistle was blown at this and two other crossings; that he did not look in the direction of the train or pay any attention to its approach. Two persons tried to warn him by shouting and waving their hands. One of them was directly in front of him where he could not have failed to see him if he had looked in the direction of the crossing. He failed to look directly to either the east or west, or ahead, but was looking southwest. He at no time looked in the direction from which the train was approaching.

After thorough and careful examination of all the evidence upon the question, we are of the opinion that but one reasonable inference can be drawn therefrom, that is, that the deceased was not at the time of, and immediately prior to the accident, in the exercise of ordinary care for his own safety. The trial court should therefore have directed a verdict for the defendant. In view of this conclusion it will not be necessary for us to consider the other errors assigned.

Judgment reversed.

**Finding of Facts,** to be incorporated in the final order of the court:

We find as ultimate facts, that the deceased, Edward Kamradt, came to his death on the 18th day of June, 1902, while attempting with a wagon and a team, to cross the tracks of the Wabash Railroad Company, at the intersection of the same and West street, in the village of Sadorus, Champaign county, Illinois. We further find that at the time of the accident and injury the said Edward Kamradt was not in the exercise of due and ordinary care for his own safety, and that in consequence thereof he met with his death.