## Chicago, Rock Island & Pacific Railway Company v. Elmer E. Jones.

### Gen. No. 4,650.

1. CONTRIBUTORY NEGLIGENCE—*when failure to look and listen constitutes.* It is the duty of one approaching a railroad crossing upon a highway to look and listen for approaching trains, if a reasonably prudent person so situated would look and listen, and a failure to look and listen precludes a recovery for personal injuries where to have looked and listened would have prevented the injury, and where there were no circumstances or conditions justifying such failure to look and listen and no obstruction to the view.

2. EVIDENCE—*relative value of positive and negative.* Positive evidence as to the fact that a bell was rung or a whistle sounded, is entitled to more weight than negative evidence in relation thereto.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1906. Reversed, with finding of facts. Opinion filed August 6, 1907.

SNAPP, HEISE & DIBELL, for appellant; R. A. JACKSON and B. S. CABLE, of counsel.

JOHN W. D'ARCY, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

This is an action on the case brought by appellee, Elmer E. Jones, against appellant, the Chicago, Rock Island & Pacific Railway Company, to recover for personal injuries sustained by him by being struck by a passenger train of appellant while crossing its track on a public highway near Joliet Mound in Will county. Upon the trial appellee obtained a verdict for $1,600. After a long delay, occasioned, the briefs state, by the sickness and death of the trial judge, a motion for a new trial on the transcript of the evidence and argument of counsel, was heard before another judge, who, without the advantage of having seen and heard

the witnesses while testifying, denied the motion and entered judgment for $1,722, the amount of the verdict and interest thereon, from which this appeal is prosecuted.

Appellee, Elmer E. Jones, and his brother, Charles E. Jones, were riding in an open buggy drawn by one horse, on Sunday morning, May 10, 1903, over the Joliet Mound highway crossing, when the buggy was struck by an east-bound passenger train of appellant running from Minooka to Joliet, and appellee and his brother were injured.

The record discloses some confusion in the indication by the witnesses of the direction in which the highway and the railway respectively run at this crossing and beyond. As the general course of appellant's right of way is east and west, many speak of its course at this point as west. The fact is, that the highway runs nearly east and west and the railway in a direction southwesterly until west of the crossing it curves nearly south and continues in that direction until it passes beyond Bird's Bridge, some four miles beyond.

Appellee and his brother lived and worked about 1,500 feet east of the crossing. On the morning of the accident they drove in an open single buggy westerly to the Garlick residence, or Johnson farm, one-quarter of a mile westerly from this crossing, and after a time turned and drove back to the crossing, where the buggy in which they were riding was struck and they were injured. Between Garlick's and the railroad, on the southeasterly side of the highway, on low ground, is the Carroll house, with trees about it. A short distance east a brook runs across the highway and through a culvert on the railroad right of way. The culvert on the highway is 570 feet from the crossing. The distance from the highway culvert to the railroad culvert is 140 feet. Both the highway and the railroad are straight from the culvert to the crossing. At a distance therefore of 570 feet from the crossing, the highway and the railroad are 140 feet apart, and run

in a straight line until they intersect at an acute angle. Some fifty feet southwesterly from the culvert, the railroad turns to the south, making a long, slight curve which extends about half a mile. There is a fence on the right of way between the highway and the railway, but the railway runs upon elevated ground higher than the fence, so that the fence forms no obstruction to the vision. At a former hearing of this case we were led to believe that there were obstructions between the culvert on the highway and the crossing sufficient to hinder a traveler on the highway from seeing a train approaching from the southwest. Upon a rehearing, we have diligently studied the record on this subject, and find our former conclusion incorrect. From a point about thirty feet east of the culvert to the crossing there is no obstruction in the shape of trees, shrubs or fences to the view southwest upon the railroad. The highway, though graded, is lower than the railroad, the difference being estimated by different witnesses at from five to eight feet. One witness testified that he was five feet and seven inches tall, and that, standing on tiptoe on the highway between the railroad and the culvert, he could see the four rails of the railroad. Appellee testified that, sitting in the buggy, he could see the four rails of the railroad. Therefore the difference in grade is evidently from five to six feet. The railroad is down grade from Minooka to a point east of this crossing, so that, to one on the highway, looking southwest along the tracks, the track rising as it recedes, the vision is not in any way obscured by reason of the railroad being on an embankment. From the above statement, it will be seen that from the culverts to the crossing the highway and the railroad are nearly parallel; therefore one traveling east on the highway must turn and look back in order to see an approaching train. Appellee and his brother testified that they first looked when eighty or ninety feet from the crossing and saw no train; that they turned and looked again as they

went upon the first track, and saw the train approaching upon the farther track. They then endeavored to cross ahead of the train, and the rear of the buggy or wheel was struck.

Appellant, prior to the trial, had photographs taken from various positions upon the highway, between the crossing and the culvert, and had caused disinterested parties to go upon the highway and note what distance they could see up the track to the southwest. After appellee and his brother had testified that they first looked at a distance of eighty or ninety feet from the crossing, appellant caused several of these parties to return and measure with a steel tape line, from the most westerly rail ninety feet down the highway, and from that point determine how far they could see southwest up the railroad and how far they could see an approaching train. Some of these witnesses testified that at a certain point they could see about to Bird's Bridge, a place nearly four miles southwest on the railroad. From the evidence it is entirely clear that the smoke of an approaching train could be seen about four miles, and that the track and an approaching train could be seen at a distance of from two to three miles, except that right at the curve there would be a short distance where a few telegraph poles on the southeast side of the railroad would come nearly in line and might obstruct the view for a short distance. Upon examination of all the proofs and a photograph taken of the highway 178 feet from the crossing, looking southwesterly up the railroad, and another photograph taken on the crossing looking up the railroad, we are of the opinion that there was no substantial obstruction or interference with the view of a train approaching within two or three miles, and that the telegraph poles could not be brought in line so as to obstruct the view for more than a portion of a passenger train, nor to obstruct that for more than an instant.

It is the duty of one approaching a railroad crossing upon a highway to look and listen for approach-

ing trains, if a reasonably prudent person, so situated, would look and listen, and a failure to look and listen precludes a recovery for personal injuries where to have looked and listened would have prevented the injury, and where there were no circumstances or conditions justifying such failure to look and listen and no obstructions to the view. T., St. L. & W. R. R. Co. v. Christy, 111 Ill. App. 247. A failure to look or listen, especially when it appears affirmatively that looking or listening might have enabled the party injured to see the approaching train and thus avoid the injury, is evidence tending to show negligence I. C. R. R. Co. v. Batson, 81 Ill. App. 142. "It is no doubt true that it is the duty of a person about to cross a railroad track to approach cautiously, and endeavor to ascertain if there is present danger in crossing." Pennsylvania Co. v. Frana, 112 Ill. 404. "The law will not tolerate the absurdity of allowing a person to testify that he looked, but did not see the train, when the view was unobstructed, and where, if he had properly exercised his sight, he must have seen it." Chicago, Peoria & St. Louis Ry. Co. v. DeFreitas, 109 Ill. App. 104; C. & E. I. R. R. Co. v. Kirby, 86 Ill. App. 57.; C. & A. R. R. Co. v. Vremeister, 112 Ill. App. 346. The train was running seventy to seventy-five miles per hour. This was in the open country, and this was not an obscure crossing, but one very plainly in sight from all directions, for the reason that the railroad was above the common level of the country, and appellant had the right to run its train at such a crossing at any speed consistent with the safety of its passengers. Appellee was familiar with the crossing, as he testified.. It was his duty as he approached the crossing to look far enough to discover any train which might reach it before he could cross. He knew the curve and knew that the railroad and the highway were nearly parallel, and he must have known that he could see for miles up the track if he cared to look. He knew that many trains went over this cross-

ing every day. In our judgment it is impossible to resist the conclusion, from the evidence, that appellee and his brother did not look for an approaching train until their horse was upon the first track, or else that they looked and saw the train and concluded they could go over the crossing ahead of it. We are of the opinion that appellee did not exercise due care for his own safety, but was guilty of negligence.

The declaration charges negligence in the operation of the train, and the failure to give the statutory signals by either causing a bell to be rung or a steam whistle on its locomotive engine to be blown at a distance of at least eighty rods from the crossing. The evidence was conflicting relative to the ringing of the bell and the sounding of the whistle. Appellee and his brother and two other witnesses testified that no bell was rung nor whistle sounded as the train approached the crossing, and a fifth witness, a long distance away at the tile works, said he heard no signal. Although these witnesses testified positively that the bell was not rung nor the whistle sounded, yet when all the direct and cross-examination is carefully scrutinized, we are led to believe that their testimony is negative; that is, that they did not hear any whistle or bell as the train approached this crossing. The engineer testified that he took this train and engine at Bureau and drove it to Chicago; that the bell was automatic and was started before he left Bureau and stopped in the depot in Chicago; that it was ringing as it went over this crossing and he had no recollection that it was stopped between these two points. The fireman testified to the same facts. There is a whistling post about 1,900 feet southwest of this crossing, and the engineer and fireman both testified that an ordinary crossing whistle, four short blasts, was given as they approached this whistling post. Their testimony was positive. The rule as laid down by the courts in this state is that positive evidence as to the fact that a bell

was rung, or a whistle sounded, or any other fact not improbable in itself, is entitled to more weight than negative evidence in relation to such facts. Chicago & Alton Railroad Company v. Gretzner, 46 Ill. 83; C., B. & Q. R. R. Co. v. Stumps, 55 Ill. 367; C., R. I. & P. R. R. Co. v. Still, 19 Ill. 499. We are satisfied that the bell was ringing automatically all the way as it approached and went over this crossing.

The fireman saw the buggy drive upon the track ahead of the train, and in some way communicated to the engineer, who looked out after they had passed the crossing and saw a cloud of dust, but saw no buggy or people, but did see a horse running. The fireman told him he believed they had struck a buggy. They had gone some distance beyond the crossing by this time. Another passenger train was following some fifteen or twenty minutes behind, so the engineer did not dare go back to the crossing, but went on to Joliet, where, being convinced that he had struck some object, he reported the circumstances. After taking his train to Chicago, he returned to Joliet and went to the place where appellee and his brother lived to get their names and the facts, that he might make his report thereon.

Impeaching testimony was introduced by appellee in rebuttal. He and his brother and one other person present at the interview with the engineer, testified that one of them asked him why he did not give them a signal, and that he answered that he was a new man on this run and was looking at his time table to see how much time he had to make connections and did not see this crossing. The engineer denied that he made this statement, and the proof showed that he had been in the railroad business thirty-two years; that he had been running an engine over this crossing five years and a half, and that he had been running this train about eight months, so that this impeaching testimony had strong elements of improbability.

We are satisfied that the bell was ringing automatically all the way as it approached and went over this

crossing, and that appellant was not guilty of any negligence. We are clearly of the opinion that appellee was guilty of contributory negligence which bars a recovery.

For the reasons indicated, the judgment is reversed.

*Reversed, with finding of facts.*

Finding of facts, to be incorporated in the judgment of the court:

We find appellee did not exercise due care as he approached and went upon the Joliet Mound crossing, where he was hurt by appellant's train, that he was guilty of negligence which contributed to his injury, that appellant was not guilty of the negligence charged against it and that appellee has no cause of action against the appellant.