## Chicago, Burlington & Quincy Railway Company v. Lovisa E. Sack et al.

### Gen. No. 4,819.

1. NEGLIGENCE—*when railroad company guilty of, as matter of law.* A railroad company which violates an ordinance regulating the rate of speed is guilty of negligence, as a matter of law.

2. NEGLIGENCE—*what establishes prima facie case, where ordinance has been violated.* The introduction of an ordinance, proof of its violation, of an injury resulting therefrom and of due care on the part of the person injured or killed, makes a *prima facie* case.

3. ORDINARY CARE—*when failure to exercise, precludes recovery.* In an action for personal injuries resulting from negligence, the failure of the person injured to have exercised ordinary care for his own safety will preclude a recovery.

4. EVIDENCE—*relative value of positive and negative.* Positive evidence as to the fact that a bell was rung or a whistle sounded, or any other fact not improbable in itself, is entitled to more weight than negative evidence in relation to such facts.

5. CONTRIBUTORY NEGLIGENCE—*when person attempting to cross railroad tracks guilty of.* A person who knowingly and voluntarily imperils himself by attempting to cross a track when an approaching train is near, is guilty of contributory negligence which will bar a recovery.

Action on the case. Appeal from the Circuit Court of Carroll County; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1907. Reversed, with finding of fact. Opinion filed October 10, 1907.

J. L. BREARTON and F. J. STRANSKY, for appellant; CHESTER M. DAWES, of counsel.

GEORGE L. HOFFMAN, for appellees.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought in the Circuit Court of Carroll county, by the administrators of the estate of Henry Sack, deceased, against the C., B. & Q. Ry. Co. and the C., B. & Q. R. R. Co., to recover damages for the loss of support by the widow and next kin of deceased, who was killed by a train of appellant, while attempting to cross its tracks on a public street in the village of Chadwick. The suit against the C., B. & Q. R. R. Co. was afterwards dismissed and the declaration amended accordingly. The cause was before us at the April term, 1906, C., B. & Q. Ry. Co. v. Sack *et al.,* 129 Ill. App., 58, and the judgment was reversed for errors of law. Afterward, there was another trial below resulting in a verdict for appellees for $5,000, a motion for a new trial was overruled, judgment was entered on the verdict and the company appealed.

The declaration contained eight counts; the first, fourth and eighth, in substance, charging that appellant's servants so carelessly and negligently drove and managed appellant's train that the wagon of deceased was struck and he thrown therefrom and killed. The second, fifth and seventh counts charged that the train was run in violation of the statute requiring signals to be given by trains approaching highway crossings. The third and sixth counts charged the existence of an ordinance limiting the speed of all trains running through the village of Chadwick to not more than ten miles an hour, and averred a violation of such ordinance. Each count averred that deceased was in the exercise of due care and diligence while riding across appellant's tracks.

The material facts in the case are as follows. Main street in the village of Chadwick runs north and south, and ap-

pellant's right of way crosses it in a northwesterly and south-easterly direction at an angle of about forty-five degrees, but east of the village it curves to the east, so that the south side of the railroad is the outside of the curve. The tracks are designated as the north or main track, center or passing track and the south or elevator track. The distance from the center of the elevator track to the center of the main track along the surface of the street is sixty-five feet. Between the passing track and the elevator track, both east and west of Main street, is a space used by teams in loading and unloading cars. South of the elevator track and east of Main street, stands a large elevator, east of which are stock yards. About one hundred feet south of appellant's right of way, and east of Main street, is a creamery. At the time of the accident, a freight car stood on the elevator track extending into Main street to within fifteen feet of the traveled highway and east of it. There was a telegraph pole about ten feet north of the elevator track and thirty feet east of the street. The depot was north of the tracks and one hundred and fifty-five feet west from the center of Main street. North of the tracks and east of Main street, on appellant's right of way were a lumber office and shed. Deceased left the creamery at about nine o'clock on the morning of November 18, 1903, driving two horses attached to a light spring wagon, and went along Main street. As he was crossing appellant's right of way, a train consisting of two engines, five freight cars and a caboose, running west on the north or main track, struck his wagon and horses, causing his death and killing one of his horses. Deceased at the time wore a fur coat with the collar turned up and a fur cap. The day was clear and cold and a strong wind was blowing from the northwest.

Appellant's evidence showed that the train was running from fifteen to eighteen miles per hour. Appellees' evidence tended to show that it was running at a greater speed. An ordinance of the village of Chadwick was introduced in evidence which limited the speed of all trains running through said village to ten miles per hour. Appellant objected to the

introduction of this ordinance and assigned several reasons therefor, but abandoned them in its argument, and we shall consider the ordinance properly in evidence under the third and sixth counts. Appellant having violated the ordinance regulating the rate of speed, was therefore guilty of negligence as a matter of law. C. & E. I. R. R. Co. v. Monchell, 193 Ill., 208. The introduction of the ordinance, proof of the violation, the injury resulting therefrom and due care on the part of deceased, would have made a *prima facie* case which appellant would have had to overcome. C. & N. W. Ry. Co. v. Nowicki, 148 Ill., 29; C. & N. W. Ry. Co. v. Dunleavy, 129 Ill., 140; C. & N. W. Ry. Co. v. Hansen, 166 Ill., 623; I. C. R. R. Co. v. Ashline, 171 Ill., 313; C. & E. I. R. R. Co. v. Beaver, 96 Ill. App., 558; Wabash R. R. Co. v. Kamradt, 109 Ill. App., 203. Appellant insists, however, that the evidence shows a want of due care on the part of deceased. The burden was on appellees to show that deceased was in the exercise of due care immediately prior to and at the time of the occurrence of the injury. Upon that question appellee's right of recovery must depend, and we deem it the only one in the case necessary to consider.

It is a firmly established doctrine that for the plaintiff to recover in this kind of a case, it must appear that he was in the exercise of ordinary care at the time of the injury. Although the evidence may show that the defendant was guilty of negligence, if it appears that plaintiff's negligence concurred in producing the injury, there can be no recovery. Calumet Iron & Steel Co. v. Martin, 115 Ill., 358; L. S. & M. S. Ry. Co. v. Hession, 150 Ill., 546; N. C. S. R. R. Co. v. Eldridge, 151 Ill., 542; Chicago City Ry. Co. v. Dinsmore, 162 Ill., 658; Wabash R. R. Co. v. Hamradt, 109 Ill. App., 203; C. & A. R. R. Co. v. Williams, 87 Ill. App., 511.

The negligence of appellant in running the train at an excessive rate of speed being established, the question whether the bell was rung or the whistle sounded as required by the statute, the omission of which was charged in the fifth and seventh counts, becomes important only in determining

whether thereby deceased had or should have had warning of the approach of the train.

Appellees called many witnesses who testified principally to matters pertaining to the speed of the train, signals and conditions at the place of the accident. None of them testified that the bell did not ring or the whistle sound as the train that killed Sack approached the crossing. All except one witness testified that they did not hear the bell ring or the whistle blow. This is negative testimony. Sybert Smith, a witness called by appellees, testified that he heard a signal half or three quarters of a mile from the station. Appellant produced Stedman, engineer on the head engine, who testified that he sounded the whistle at the board half a mile from the station, at the east switches, and then again at the crossing east of Main street, because there he saw a woman in a top buggy driving toward the track along Main street from the north; that she turned and went back and at about this time Licher, his fireman, called to him to stop, at which he applied the air and shut off the steam; that he began ringing the bell at the whistling post; that it was ringing from this point until the train passed over the Main street crossing; that the bell ordinarily rang automatically but that on this trip somewhere between Aurora and Chadwick it got out of order and he rang it by hand. Wadkins, the freight conductor, testified that the whistle was blown at the station board a third of a mile east of the town, at the east switches, and again as the brakes were applied. Reynolds, head brakeman, testified that the whistle was blown for the town near the green semaphore, again at the east switches and again near Main street. Wright, rear brakeman, testified that the whistle was first blown for the station, next at the east switches and again between the east switches and Main street crossing. Kesel, fireman on the second engine, testified that the whistle was blown at the mile board east of Chadwick, and that then the bell began to ring; that the whistle was blown at the switches and again between the two crossings. Licher, fireman on the head engine, testified that the first whistle was a station whistle blown half

a mile east of town, that another was blown at the east switches and another between Main street and the crossing east; that the bell began to ring when they whistled for the town and rang until they stopped. Frank Watson was called by appellant and testified that he was in a corncrib about thirty rods from the first crossing east of Main street, and that he heard the whistle when the train was at the switches where the middle track joins the main track. This testimony was positive. The rule laid down by the courts in this State is that positive evidence as to the fact that a bell was rung or a whistle sounded, or any other fact not improbable in itself, is entitled to more weight than negative evidence in relation to such facts. C. & A. R. R. Co. v. Gretzner, 46 Ill., 83; C., B. & Q. R. R. Co. v. Stumps, 55 Ill., 367; C., R. I. & P. R. R. Co. v. Still, 19 Ill., 499. We are satisfied that the whistle sounded at the whistling post for the station, again at the east switches, and at the crossing east of Main street, and that the bell began ringing at the whistling post and rang continuously as the train approached and went over the Main street crossing. The evidence shows that the whistling post was eighteen hundred feet from the center of Main street, the east switch nine hundred and fifty feet, and the east crossing five hundred and fifty feet.

At the close of appellant's evidence in chief and again at the close of all the evidence, appellant offered and asked the court to give peremptory instructions to the jury to return a verdict for appellant for the reason that the evidence showed a want of due care on the part of deceased. This the court refused to do, and its action is assigned as error. The cause and manner of the death of Sack being undisputed, the only question to be determined under the motion, was, whether as a matter of law, the court could say that he was not in the exercise of ordinary care for his own safety. While courts are not at liberty to say as a matter of law, that one must conduct himself in a particular manner and observe a particular line of conduct in each case and under all circumstances (C., B. & Q. R. R. Co. v. Pollock, 195 Ill., 163; 109 Ill. App., 203), or that a traveler is bound under all

circumstances to look and listen before crossing a railroad (C. & N. W. R. R. Co. v. Hansen, 166 Ill., 623; C. & A. R. R. Co. v. Pearson, 184 Ill., 391), yet, as said in the Hansen case, *supra,* "The question in each case may become a question of law and come within the province of the court so that a particular verdict may be directed if the evidence in the case is such that all reasonable men would agree in their conclusion from it, and if the court can say that but one reasonable inference can be drawn from the facts, the court should act accordingly." It was under these rules, the court was called upon to act upon the motion to direct a verdict.

The evidence shows that deceased was familiar with the crossing, having for a considerable period of time driven to the creamery; that he was of mature years and of at least ordinary intelligence; that when within fifty feet of the south rail of the north track, he had a clear and unobstructed view for sixteen hundred feet to the east of the track or of a train approaching thereon; that the bell of the engine was ringing continuously as the train approached and went over the crossing, and that a whistle was blown at the whistling post eighteen hundred feet east of Main street, and at the east switch nine hundred and fifty feet from Main street, and again at the east crossing five hundred and fifty feet east of Main street. John Licher, the fireman on the head engine, testified that deceased looked at the train and when about half way between the elevator and passing track, whipped up his horses. This testimony is positive, credible and uncontradicted. It is also clear from the evidence that after deceased looked at the train, as stated by Licher, he could have stopped as the horses were traveling slowly, or he could have turned to the east or west upon the space between the elevator and passing tracks and avoided the collision. Deceased should not knowingly and voluntarily have imperiled himself by attempting to cross the track when an approaching train was so near. In Ernst v. H. R. R. Co., 35 N. Y., 9, it is said: "A party who sees or hears an approaching engine, and chooses to take the risk of crossing before it, rather than await its passage, forfeits all claim to redress." In

the case of C., R. I. & P. R. R. Co. v. Houston, 95 U. S., 697, it is said, "if, using them (her senses) she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass and was injured the consequences of her mistake and temerity cannot be cast upon the defendant."

After a careful examination of all the evidence in the case, we are of the opinion that but one reasonable inference can be drawn therefrom, that is, that deceased was not, at the time of and immediately prior to the accident, in the exercise of ordinary care for his own safety, and that such lack of ordinary care for his own safety contributed to the accident and injury. The trial court should therefore have directed a verdict for defendant.

The judgment is reversed.

*Reversed, with finding of facts.*

Finding of facts, to be incorporated in the judgment of the court: We find that the deceased, Henry Sack, came to his death on the 18th day of November, 1903, while attempting with a team and wagon to cross the tracks of the C., B. & Q. Ry. Co. at the intersection of the same with Main street in the village of Chadwick, Carroll county, Illinois. We further find that at the time of the accident and injury and immediately prior thereto the said Henry Sack was not in the exercise of due and ordinary care for his own safety and that the lack of such care and diligence contributed to his death.