Bonnie H. Derges, Administrator, Appellee, v. The Chicago, Burlington & Quincy Railroad Company, Appellant.

Gen. No. 5,124.

1. ORDINANCES—*when unreasonable in restricting use of railroad right of way.* Held, that an ordinance offered in this case was unreasonable and void in that it unreasonably restricted the use by the railway company defendant of its own right of way.

2. CONTRIBUTORY NEGLIGENCE—*when person killed at railroad crossing guilty of.* Held, under the evidence, that the plaintiff's intestate was guilty of contributory negligence which barred his recovery in that he either disregarded or negligently failed to see the flagman's signal to stop.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed April 28, 1909.

JACK, IRWIN, JACK & MILES, for appellant; C. M. DAWES, of counsel.

JAMES A. CAMERON and JOSEPH A. WEIL, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is an action in case brought by Bonnie H. Derges, administrator of the estate of Henry Julius Derges, deceased, appellee, against the Chicago, Burlington and Quincy Railroad Company, appellant, to recover damages for the loss of support by the widow and next of kin of the deceased, who was killed by a train of appellant, while attempting to cross its tracks in a buggy within the limits of Peoria.

The declaration contains three counts: the first alleges careless and negligent operation of a locomotive and train of cars by the appellant on its railroad, by backing the train towards and over a certain public highway known as Cedar street whereby the deceased

was killed; the second alleges that there is an ordinance of the city of Peoria providing that it shall not be lawful to permit any locomotive or car to stand on any railroad track across the view of any street running towards the Illinois river, and that the appellant operates a railroad and backed a locomotive and train thereon toward a crossing of the railroad by a public highway within the city of Peoria known as Cedar street, or an extension thereof toward the river from the easterly end of Cedar street; that the appellant obstructed said highway contrary to the ordinances of the city of Peoria, so that said street was impassable except sixteen feet in width which was planked over and to which the travel was confined, and that the appellant left standing on said highway contrary to the ordinances of the city of Peoria and on its track a certain freight car, which obstructed the view so that Derges was unable to see cars approaching and backing toward the crossing on the next track toward the river; and the third count alleges negligence on the part of the appellant in failing to ring a bell or blow a whistle and in failing to keep a look out on top of the car nearest the crossing while backing its train toward said crossing, which was a public thoroughfare. Each count avers that the deceased was in the exercise of due care while driving across appellant's tracks. There was a verdict and a judgment in favor of appellee for $4,000, and the railroad company appeals to this court.

The parties stipulated that Cedar street in the city of Peoria extends at right angles with Adams street, and towards the Illinois river, of a width of seventy feet to the northwest line of defendant's right of way; that said street was never dedicated or laid out beyond the northwest line of said right of way; that for more than twenty years prior to the date of the accident the defendant has maintained a plank crossing over its tracks sixteen feet wide for the convenience of persons and industries on the southeast side of its railroad; that the center of the railroad crossing is opposite to

and continuous with the center of Cedar street; that foot passengers and vehicles use said driveway in crossing said track to said industries; that the city of Peoria for many years has maintained a crossing flagman at that crossing and the railroad company has no power of appointment or discharge over said flagman and said flagman and other flagmen are all paid out of a general fund assessed by the city against all railroads in the city; that it is not practicable to drive across said track on either side of said sixteen-foot crossing; that the northwesterly line of defendant's right of way and the southeasterly end of Cedar street are on a line with the southeasterly end of the Peoria Cooperage Company's building; that the plank crossing in question crossed nine separate tracks belonging to the defendant, the first of which is five feet from the lower end of Cedar street and it is thirteen feet from the center of the first track to the center of the second track.

In addition to the stipulation the evidence shows that the Peoria Cooperage Company has a building situated in the angle southwest of the end of Cedar street and northwest of the right of way of the railroad, the building covering the lot to the line of the street and the line of the right of way; that the Cooperage Company has an ash bin extending into the street across the end of the sidewalk almost to the curb on the southwest side of the street, and apparently extending out to the right of way so as to be close to cars standing on the first track; that at the time of the accident a coal car loaded with ashes stood by the ash bin, the north end of the car projecting on the right of way beyond the southeast end of the street as far north as the northwest side of the ash bin and to within a very few feet of the plank crossing; that on September 11, 1907, about eleven o'clock in the forenoon, the deceased, a man of about sixty-five years, in the possession of all his faculties, riding in an open buggy drawn by one horse, drove southeast down Cedar

street and undertook to drive across the railroad tracks on the plank crossing; that three switchmen, a fireman and an engineer were making up a train on the second track from the end of Cedar street southwest from Cedar street; that the train consisted of a locomotive at the west end and about twenty cars northeast from the engine, so that the train was over six hundred feet long and would have about fifteen feet of slack between the cars; that the train stopped to couple a car to the train when the next easterly car was about four car lengths from the plank crossing; that the tracks curve southwest from the crossing so that a switchman at the end of a train of the length of this one cannot see the engineer, and must communicate his signals through a brakeman or switchman nearer the engineer; that the switchman was on the east end of the second car from the east end of the train when the signal was given to move the train northeast. There is some conflict in the testimony whether, when the train moved east, the switchman remained on the second car from the end or was on the east end car when the train moved toward and upon the crossing; but the preponderance of the evidence is that he was on the end car. The train in moving east struck the buggy in which Derges was driving, crushing it down and killing him, after pushing him past the crossing.

Appellee offered in evidence the title page and section 1919 of the ordinance of the city of Peoria, as follows:

"Sec. 1919. It shall not be lawful for any locomotive, engine, tender, passenger car, freight car, or any other railroad car whatever, to stand upon any railroad track, in said city, opposite to or across the foot of any street running to or towards the Illinois river or Lake Peoria, except while used in repairing any such track."

The appellant objected to the ordinance as incompetent and immaterial under the stipulation, but the

court overruled the objection and appellant excepted. Error is assigned on this ruling of the trial court. The same question was raised by an instruction requested by appellant concerning this ordinance, which the court refused to give. Under the stipulation Cedar street is seventy feet wide and terminates at the northwest side of the right of way of appellant. The sixteen-foot plank crossing is opposite to and continuous with the center of Cedar street northwest of it. The second count of the declaration alleges that appellant obstructed the public highway, except the sixteen feet that was planked, by placing and leaving a car standing upon said highway contrary to the ordinances. The ground opposite and contiguous to the southeast end of Cedar street is the private property of appellant, and the public under the stipulation have no rights thereon except upon the planked strip sixteen feet wide. The railroad owned the right of way and the street was laid out up to it but not across it. The railroad maintains the sixteen-foot crossing, but the public have no other or greater rights in the right of way not covered by the crossing than if the crossing was not there. The ordinance admitted in evidence forbids the railroad from permitting a car to stand on its own property "opposite to or across the foot of any street running to or towards the Illinois river." The appellee argues that this is a valid ordinance under subdivision 27, of paragraph 63, of chapter 24, —the city and village act—which provides that the city council shall have the power to pass ordinances "to require railroad companies to keep flagmen at railroad crossings of streets, and to provide protection against injury to persons and property in the use of such railroads." There is no reason apparent why the railroad might not permit cars to stand on its own right of way. Cities and villages have authority to control speed of trains within their limits, but that power is expressly given to them by the 21st section of the same paragraph and is limited to not below a

certain rate by section 87, of chapter 114, of the statute. The fact that the Illinois river is on the other side of the railroad from the end of the street cannot add to the powers of the city. The ordinance has no reference to railroads maintaining narrow crossings or crossings of less width than the streets approaching the crossing. Had there been no crossing maintained by the railroad from the end of Cedar street we can see no reason why the railroad might not have fenced its right of way if it saw fit and permitted cars to stand on the right of way, shutting off the view of the river from the street. There is no more reason why persons and property need protection opposite the ends of streets abutting on a railroad than there is for requiring protection elsewhere on the right of way. If persons would be trespassers on the right of way where private property abuts on both sides they would equally be trespassers opposite the end of a street. The ordinance in question appears to be an unreasonable limitation on the use of the railroad right of way by its owner and in effect is an appropriation of property or property rights without compensation and is therefore void. The court erred in overruling the objection to the ordinance, and there is no evidence upon which a judgment can be sustained on the second count.

Appellant insists that the judgment cannot be sustained because the proof not only fails to show that the deceased at the time of and prior to the accident was in the exercise of ordinary care for his own safety but does show that by his own negligence he contributed to his death. All the proof shows that the train was not moving faster than between three and four miles an hour and about the same rate that Derges was driving. The flagman testifies that he was on the plank crossing and gave a signal to Derges to stop before he got on the tracks and that he "kept signalling and hollering to him but he did not pay any attention to him." A young lady, whom Derges passed

sixty feet from the tracks going in the same direction as Derges, testified that the flagman was signalling to Derges and she screamed at the top of her voice. The switchman at the east end of the train testifies he was on the end car and first saw Derges about twelve feet from the first track when the car was twenty-five or thirty feet from the crossing, and that he called to him in a loud voice and immediately gave stop signals, which because of a curve in the track had to be communicated to the engineman through a switchman nearer the locomotive. The engineer of the Cooperage Company, who was on Cedar street in front of the building, testifies he saw the flagman signal Derges to stop, but Derges continued on his way on a slow trot. Michael Reardon, a witness for appellee, testifies that the plank crossing is thirty to forty feet wide and seventy-five feet long, and that the flagman signalled Derges to come ahead; this witness says he was working about a block away, up about thirty feet from the ground; that the car that killed Derges was standing still about five feet over the crossing until bumped against Derges as he drove on the crossing, and that if the car was moving it was so slow he could not see it move. This witness testified at the coroner's inquest, and there testified that his attention was called to the collision just as it occurred, and made no mention of the flagman at the inquest. A careful examination of all the testimony neither reveals any proof of care or caution on the part of Derges nor any excuse for his driving on the track, except the testimony of Reardon that the flagman signalled him to cross. This witness is impeached by his former testimony and by the direct testimony of one of appellee's witnesses and of three of appellant's witnesses, who from their location had a much better opportunity to see what occurred, and who say the flagman signalled the deceased to stop. The flagman it is also to be noted, was not employed by or under the control of appellant. The moving freight cars

were plainly visible over the coal car to pedestrians and to people driving in the street. This crossing was a very dangerous one. The train was moving very slowly. The city flagman was at his post of duty, and a very great preponderance of the evidence is that he signalled the deceased not to cross. It is the duty of a person about to cross a railroad track to do whatever a reasonably prudent person would do under the same circumstances. C., R. I. & P. Ry. Co. v. Jones, 135 Ill. App. 380, and cases there cited. It is a firmly established doctrine that for the plaintiff to recover, in this kind of a case, it must appear from the evidence that he was in the exercise of due care, and although it may appear that the defendant was guilty of negligence, if it appears that plaintiff's negligence concurred in producing the injury, there can be no recovery. L. S. & M. S. Ry. Co. v Hessions, 150 Ill. 546; N. C. S. R. R. Co. v. Eldridge, 151 Ill. 542; Chicago City Ry. Co. v. Dinsmore, 162 Ill. 658; C., B. & Q. Ry. Co. v. Sack, 136 Ill. App. 425; C., R. I. & P. Ry. Co. v. Jones, 135 Ill. App. 380. The appellee not only failed to prove due care by a preponderance of the evidence but it affirmatively appears that the deceased was guilty of negligence either in disregarding or failing to see the flagman's signal to stop. The evidence given in behalf of the appellee considered by itself, however, would sustain a verdict for appellee.

"If there is in the record any evidence from which if it stood alone, the jury could without acting unreasonably in the eye of the law, find that all the material averments of the declaration have been proven, the case should go to the jury." "If the court is of the opinion that there is evidence in the record, which, standing alone, is sufficient to sustain such a verdict, but that such verdict, if returned must be set aside because against the manifest weight of the evidence, then the motion (to direct a verdict) should be denied." Libby, McNeil & Libby v. Cook, 222 Ill. 206; Barley v. Robison, 223 Ill. 616; Simmons v. Chicago

& Tomah R. R. Co., 110 Ill. 340. The court did not err in refusing to direct a verdict for appellant, but did err in refusing to grant a new trial because the verdict was so manifestly against the weight of the evidence. A judgment cannot be sustained on the evidence; the case is reversed with a finding of fact. It is unnecessary to discuss the other questions argued.

*Reversed.*

Finding of facts, to be incorporated in the judgment: We find the deceased came to his death because of his own negligence and want of care in driving across the tracks of appellant in disregard of the signals of the crossing flagman, and that appellee has no cause of action against appellant.