## Edward C. McClintick, Appellee, v. Toledo, Peoria & Western Railway Company, Appellant.

### Gen. No. 5349.

CONTRIBUTORY NEGLIGENCE—*when person crossing railroad tracks guilty of.* Held, under the evidence, that the plaintiff in this case was injured as the result of his own negligence in seeking to cross railroad tracks at a point on the right of way not a street where a plank crossing had been provided, the evidence establishing either that the plaintiff did not look for approaching trains or else disregarded the apparent approach of the train which struck him.

Action in case for personal injuries. Appeal from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1910. Reversed. Opinion filed October 18, 1910. Rehearing denied April 6, 1911.

STEVENS, MILLER & ELLIOT, for appellant.

GEORGE. J. JOCHEM and JAMES A. CAMERON, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On September 8, 1908, appellee, then nearly sixteen and one-half years of age, was standing upon or crossing one of the main tracks of appellant in the city of Peoria, when he was struck by an engine running backwards and his left leg was crushed so that it became necessary to amputate it four and one-half inches below the knee. He brought this suit to recover damages for said injury. A demurrer was sustained to the amended second count of his declaration. The court directed a verdict for defendant as to the first and fourth counts, and, upon the third count, plaintiff had a verdict. The third count alleged that defendant's railroad was traversed by a certain roadway or crossing at a point opposite Cass street in the city of Peoria, said road way being a continuance or extension

of Cass street, generally used by the public for the purpose of crossing the railroad tracks at that point, with the knowledge and consent of defendant; that defendant was driving an engine backwards towards and upon said roadway; that the plaintiff in the exercise of due care for his own safety was lawfully traveling on foot upon said roadway across said track of defendant; that defendant negligently failed to give any or proper notification or warning of the approach of said engine and because of that negligence plaintiff was struck and injured.   Plaintiff had judgment and defendant below appeals.

Cass street runs from northwest to southeast, and its southeast termination is at the foot of a bluff and at land occupied by several railroads.   Going southeast down hill from the end of Cass street, there is first an open space of some sixteen feet, and then five parallel railroad tracks running at right angles to Cass street, or in a northeasterly and southwesterly direction near the river front.   A little southwest of the middle of what would be Cass street if it had been extended across the tracks, the railroads then and for many years prior thereto maintained a plank crossing or driveway sixteen feet wide across said main tracks. Twenty feet beyond the five main tracks was an old switch track, but the plank crossing did not go over it. Twenty feet southwest from the lower end of the plank crossing was a flagman's shanty, at which was stationed a flagman appointed and paid by the city of Peoria.   The railroads were required to reimburse the city for the services of this and other like flagmen.   A switch track turned off to the southwest parallel with the main track at the flagman's shanty, and passed by certain ware-houses a little further southwest.   The main tracks were used by several different railroads. It is stipulated that this plank crossing was open for travel from Cass street toward the river, and was maintained by the railroads using the tracks at that point

as private railroad property, and that that condition had existed for a number of years. The condition of this crossing seems to have been similar to that at the foot of another street in said city, described by us in Derges v. C. B. & Q. R. R. Co., 148 Ill. App. 639. The first and fourth counts alleged a duty and a failure to give statutory signals, and no cross errors are assigned upon the action of the court in directing a verdict for appellant on those counts, nor in sustaining a demurrer to the second count charging general negligent operation of the engine. The evidence does not directly show why this plank crossing was maintained by the railroads nor for what purpose people crossed there, but it is a matter of fair inference from the proofs that it was for the purpose of enabling the public having business with the railroad to reach the switches on the lower side of the right of way. Nothing is alleged or proven from which it can be held that this was a public street.

Appellee and his father and others under his father were working further southwest at a building between the railroads and the river. It was a hot day, and the father sent appellee to get a pail of beer at a saloon on the northeast side of Cass street, just beyond the right of way. Appellee came up a path between the old switch track and the main tracks, passed the flagman's shanty and went upon the plank crossing. On the third track, counting from the lower end of the planking, an engine was pulling a cut of passenger cars southwest. Appellee claims that he passed about a foot beyond the upper rail of the second track and stood there waiting for the passenger cars to go down to the southwest, and that, while standing there, he was struck by the corner of the tender of the engine backing northeast on the second track. He claimed that he looked both ways and did not see the engine coming. The tracks were straight for two blocks to the southwest, and there were no other cars on the main tracks. Various witnesses testified for appellee

that they did not hear a bell rung on that engine, while they did hear the bell on the engine going southwest ahead of the cut of cars. Appellee testified that he heard a bell ringing southwest of him, but that it was the bell on the passenger train, and that he did not look when he heard the bell. The engineer of the engine backing up testified that he gave a whistle as a warning a block or two away and that his bell was ringing continuously. To the same effect was the testimony of the fireman and of the flagman. From a careful reading of this evidence we are of the opinion that the proof that the warnings were given outweigh that which tends to show that they were not given. It was in the line of duty of defendant's witnesses to know the movements and signals of the trains and engines. The flagman was under no obligation to appellant, and he was positive that the bell was ringing. Appellee's witnesses were men working near the tracks, and having no occasion to notice the signals. It is a matter of common observation that men who are steadily employed near where railroad trains are very frequently passing, soon become oblivious, not only to the signals, but even to the trains. We should therefore have been better satisfied if there had been a verdict for appellant on the ground that the charge of negligence was not sustained by the proofs; but we base our decision upon another ground.

It was essential that appellee prove that he was in the exercise of due care for his personal safety. His proof tended to show that the speed of the engine was from six to eight miles per hour. The proof offered by appellant tended to show that its speed was from four to six miles per hour, and the engineer testified that it did not exceed four miles per hour and gave his reasons. Appellee testified that he stood one foot beyond the farther rail of the second track and that he looked and saw no engine coming. At the hospital at a later day, he told a surgeon and a lawyer that he did

not look in the direction from which this engine came. He was picked up some distance north of the plank crossing. Appellant introduced evidence tending to show that appellee undertook to run around the engine as it was approaching him, and went off the plank crossing to the northeast around the end of the engine and diagonally towards the saloon. The flagman testified that as appellee went by him at the flagman's shanty he told appellee to hold up, that it was dangerous to go across there, and that appellee said: "Oh, pshaw, I am in a hurry," and went on. It matters not which version is true.

Appellee was a bright young man, fully possessed of the senses of sight and hearing. He was acquainted with the locality, having worked in the vicinity for some time. He knew that there were a number of tracks there, and that engines and trains were passing with great frequency. There was nothing in the passing of an engine and two or three passenger cars on the third track to distract his attention from his real situation. He does not claim to have been distracted or misled. He merely claims that he looked and that this engine was not to be seen. The track was straight for two blocks, the engine was moving slowly, and his account is manifestly impossible. If he stood and was hit where he claims he was, he did not look, and ordinary care required that he should do so, there being nothing in the surrounding circumstances to excuse him for not doing so. C. R. I. & P. Ry. Co. v. Jones, 135 Ill. App. 380. If he did look, he saw the approaching engine, ran off the plank walk and undertook to run around the front end of the engine, and miscalculated the chances of doing so safely. When he got off the plank crossing, he was a trespasser. There was nothing wilful in the conduct of the men in charge of the engine. Whichever view of the proof is taken, it is clear to us that he was not in the exercise of due care for his own safety, and that this unfortunate accident is attributable to his own negligence. He there-

fore has no cause of action, and the judgment is re-versed.

*Reversed.*

Finding of facts, to be incorporated in the judgment: We find from the evidence that appellee, plaintiff below, was not in the exercise of due care for his own safety and that the injuries for which he sues were caused by his own negligence.