Chicago, Peoria & St. Louis Ry. Co. v. R. K. DeFreitas.

1. NEGLIGENCE—*Where a Person Looks at an Approaching Train and Does Not See It.*—Where an approaching train is in full sight of a person attempting to cross a track and he apparently looks but does not see the train it will be presumed that he did not look.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Morgan County; the Hon. OWEN P. THOMPSON, Judge presiding. Heard in this court at the November term, 1902. Reversed, with a finding of facts. Opinion filed April 30, 1903.

HENRY L. CHILD and L. O. VAUGHT, attorneys for appellant; BLUFORD WILSON and PHILIP BARTON WARREN, of counsel.

J. MARSHALL MILLER, attorney for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an appeal from judgment of $45.92, recovered against appellant by appellee in the suit for damages caused by the collision of one of appellant's cars with appellee's milk wagon at a street crossing in the city of Jacksonville.

The evidence in the record shows that on December 9, 1901, about nine o'clock in the morning, two boys, by the names of Frank and Benny Nunes, were delivering milk for appellee, and were driving one horse drawing an ordinarily covered milk wagon, with doors on the sides and glass in the same, and windows back and front. Their route took them across appellant's tracks at Independence avenue, in Jacksonville. They were coming from the west on Herd street, which is the next street south of Independence avenue. At about 200 feet from the tracks and about 400 feet from Independence, they started diagonally northeast across a vacant lot toward Independence avenue, reaching the avenue from twenty to thirty feet before reaching its crossing with the railroad. The track at this point is raised about five feet above the general level of the

surrounding land. Frank was sitting on the left hand side, or what was the north side of the wagon, and his brother was sitting on the south side. Frank was driving. He testified that some twenty feet before reaching the tracks, he opened the door on the right side of the wagon and leaning out, looked south for a train but saw none. He says he looked south again just before reaching the crossing. Just as the wagon was fairly upon the center of the track, it was struck by the north end of a box car coming from the south at a speed of from three to six miles per hour. The horse, after being dragged a few feet, broke loose from the wagon and, running east of the track, was caught by other parties. The wagon was pushed down the track some forty feet when the train was stopped. The wagon was practically demolished. The train consisted of three coal cars, a box car and an engine, the coal cars being between the engine and the box car. The engine was headed north and was pushing the cars. It had been used in switching from the Wabash track, which was three or four blocks south. The box car, in switching, had been left on the main track of appellant's road, something over a hundred feet south of Independence avenue, the engine having gone back to a "Y" switch which connected with the Wabash track and connected with the main track about 700 feet south of Independence avenue crossing. After finishing switching on the "Y," the engine, with the coal cars ahead of it, came down the main track and coupled onto the box car and started pushing down the main track. On the train were the engineer, fireman and yardmaster. The yardmaster, after coupling on the box car, got on top of the coal car and gave the signal to go ahead. The box car was between him and the crossing and prevented him from seeing the horse and wagon. There is some conflict in the testimony as to whether the bell was ringing. The case hinges entirely upon the point as to whether or not appellee's driver was in the exercise of ordinary care when he drove upon the crossing. Appellant requested the court to propound to the jury the following special inter-

rogatory, which was denied: "Was the driver of the wagon negligent in his approach to the crossing?" We are unable to see why this special interrogatory was refused. If the driver was negligent, he was not in the exercise of ordinary care, and the question is the same as one asking whether the driver, at the time he approached the crossing, was in the exercise of ordinary care.

Upon the whole, however, we are unable to see how the verdict and judgment can stand. It is clear from the evidence that one approaching appellant's track from the west, by way of the cut from Herd street to Independence avenue, can see the crossing at least 200 feet before reaching it, and that at any point within 200 feet the railroad track could be seen for at least 600 feet south of the crossing. The view of the track was plain and unobstructed. The boys were driving slowly and the train was not moving at a rapid rate. If they had looked, at this point in their course, the train could have been seen in full view. We are forced to the conclusion, from the evidence in the record, that the boys either looked, as they say they did, and saw the train approaching and attempted to cross in front of it, or that they did not look. It is most probable that they did not look. The testimony of a witness to that which is physically impossible must be rejected as not in accordance with the truth of the matter, even if not contradicted by the direct testimony of any other witness. If a person looks, he is supposed to look for the purpose of seeing; and if the object is in plain sight and he apparently looks, but does not see it, it is manifest he does not do what he appears to do. The law will not tolerate the absurdity of allowing a person to testify that he looked, but did not see the train, when the view was unobstructed, and where, if he had properly exercised his sight, he must have seen it. C. & E. I. R. R. Co. v. Kirby, 86 Ill. App. 57; Artz v. R. R. Co., 34 Ia. 153; Thompson on Negligence, Vol. 2, Par. 1655.

There is nothing in the evidence to justify the conclusion that appellant's servants were guilty of willful and wanton negligence. It was therefore the duty of the trial court to

instruct the jury, as requested, to return a verdict for the defendant. The judgment will be reversed, but the cause will not be remanded.

**Finding of Facts.**—We find that the driver of appellee's wagon was not in the exercise of ordinary care when he approached the crossing where appellant's car collided with his milk wagon, and that there is no cause of action against appellant.