## Chicago and Alton Railroad Company v. Henry Vremeister.

### Gen. No. 10,966.

1. HAND-CAR—*duty to give warning of the approach of.* There is no statute in this state which regulates the operation of hand-cars. In this case no ordinance upon such subject was shown, and it was held, under its particular facts, that no common law duty to give such a warning arose.

2. CONTRIBUTORY NEGLIGENCE—*when failure to look is.* Where the accident occurred in the broad daylight, upon a day which was bright and clear, while the sun was shining, and the view up and down the tracks was unobstructed and the plaintiff's eyesight good, the plaintiff is guilty of contributory negligence in failing to look up and down such tracks and in failing to observe, if he did look, the conveyance which subsequently struck him.

3. WITNESS—*when testimony of, will be disregarded.* The testimony of a witness to that which is physically impossible must be rejected as not in accordance with the truth of the matter, even if not contradicted by the direct testimony of any other witness.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed. Opinion filed March 1, 1904.

**Statement by the Court.** Appellee recovered judgment for $2,500 against appellant for injuries sustained by him in consequence, as he alleges, of a failure to lower the gates or give any warning of an approaching hand-car, by reason whereof it is claimed that the horse attached to a wagon in which appellee was riding took fright and ran away, thereby upsetting the wagon and inflicting the injuries sued for.

The accident occurred at the intersection of Ashland

avenue and the tracks of appellant, the Illinois Central and the Atchison, Topeka and Santa Fe railways in Chicago, about 5:45 P. M. on June 29, 1900. Ashland avenue runs north and south. It is crossed by four tracks running in a northeasterly and southwesterly direction. The first track to the north is that of the Illinois Central, the next of the Santa Fe, and the two at the south belong to appellant. Just west of the sidewalk on the west side of Ashland avenue and to the north of the tracks is a flagman's tower house from which crossing gates are operated at the north and south sides of the crossing. About 86 feet west of the street and 12 feet north of the northernmost track is a small frame tool house of the Illinois Central, with a little runway for running in a hand-car. South of the tracks and about 30 feet west of the center of the street is a small tool shanty of appellant's. There were no buildings or obstructions other than those mentioned on the west side of Ashland avenue or to the west thereof and north of the tracks, to prevent a view along the tracks from the crossing to the west as far as one could see by one approaching the track from the north on Ashland avenue.

Appellee was engaged in selling candy to small stores in the southwestern part of the city. He had a covered one-horse wagon, open at the front and the forepart of the sides, which he had driven over about the same route for two months prior to the accident. On the day in question he was on his way home from making his round of calls on customers and driving south on Ashland avenue. As he reached the railroad crossing a hand-car of appellant's was passing over the street on the track furthest south. The horse took fright, turned suddenly to the west and ran up one of the tracks to the tool house where the wagon turned over, landing on top of appellee. The hand-car was of the ordinary type propelled by hand, and members of the section gang were pumping the handles up and down as it crossed the street. It came from a point further west where the men had been at work and had stopped a little west of the crossing for the men to place their tools in the

tool shanty.   When it started up again one man got off to push it as it was hard running over the street crossing where dust and dirt had gathered about the rails.

Appellee testified that he drove his horse over the tracks to the last one without seeing the hand-car which "suddenly came along with four men working up the big handles, coming from the west going east.   That scared the horse and he jumped the first track over those big rails; then he jumped over another track and upset the wagon."

The negligence charged against appellant is that its servants drove the hand-car at a high rate of speed across the street without any warning of its approach and that the gates were up, thereby giving notice to appellee that the crossing was safe and clear to pass over.   It is not denied that the gates were up and that no warning of any kind was given.

SCOFIELD & BROWN and JOHN E. KEHOE, for appellant.

E. H. ADAMS and RICHARD E. BURKE, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

The statutes do not require the giving of any signal or warning of the approach of a hand-car.   No ordinance was proven making it incumbent upon appellant to give such signal or warning.   The question therefore is whether under the proof appellant was negligent at common law in failing to give appellee notice of the approaching hand-car. As in Illinois, so in Indiana, no statutory duties are prescribed for the operation of a hand-car, and in R. R. Co. v. Juday, 49 N. E. 843, the Supreme Court of that state say : " It follows therefore that in the lawful operation of a hand-car by a railway company in the transaction of its legitimate business it is required to exercise only such care and caution as may be required to protect the traveling public.   *   *   *   In operating its hand-cars on the occasion complained of, appellant's servants upon approaching the highway crossing were not required to give any signal or alarm, or to slacken their speed, or stop to see if any one was approaching the crossing."

In Yingst v. R. R. Co., 167 Pa. St. 438, where as here there was no collision, the plaintiff was riding in a wagon. Her horse took fright at an approaching street car and wheeling about overturned the wagon and injured the plaintiff. The court say: "The motorman was not responsible for the fright of the horse at the sight of the car, and was not bound in advance to take precautions against a fright of which he had no knowledge, at least not until he had some evidence of the fright."

In Dewey v. Ry. Co., 75 N. W. (Wisc.) 74, the plaintiff driving a horse and buggy approached a railroad crossing near which an engine stood thirty feet away from the street. The complaint charged that defendant's servants without any warning carelessly started the engine, causing it suddenly to exhaust steam with a loud noise and to emit a great volume of smoke and cinders whereby the horse was frightened, became unmanageable, and suddenly turned and overturned the buggy. The court say: "It appears that the way on which plaintiff was driving when injured was clear as the horse approached the tracks; that the engine was in plain sight some distance from the line of travel and was about to move westward, to the knowledge of the driver of the horse. Such being the case there was no occasion for any warning being given by the flagman. Whatever danger existed was as well known to the driver as to the flagman. * * * That where injuries result from the frightening of horses by the sight of moving cars, trains or locomotives or the usual noises or incidents of their ordinary operation, there is no liability on the part of the railway company, is firmly established and recognized as the law" (citing cases).

The great preponderance of the evidence is that the handcar in question was moving quite slowly over the crossing. Indeed, there is none to the contrary except that the men operating it were on their way home and traveled something more than two miles in about a quarter of an hour, from which the inference is sought to be drawn that they were proceeding at that rate while going over the crossing.

It by no means follows that they progressed at that same rate of speed all the time, and the proof is positive and uncontradicted (unless it be so inferentially) that the progress of the car over the street was so slow on account of the condition of the rails as to require and permit one of the men to push it from behind. There is no proof that horses habitually shy at hand-cars; and no reason existed why appellant's servants should give or have been required to give appellee any notice or warning of the approach of the car, especially when it was in plain sight and he must have seen it if he was looking as he claims to have been. There was nothing in the existing situation to suggest any occasion or necessity for putting appellee on his guard. To hold that appellant was negligent would mean that every person driving a vehicle or carrying an object or doing anything whatever at which a horse might possibly take fright would have to give notice of his coming. Such is not the law. On the contrary, "railway companies running their trains in a lawful and usual manner without negligence or wanton disregard of the rights of others are not responsible to travelers for damages which may happen to them as a consequence of their horse taking fright." 1 Thompson on Negligence, 351.

We are also of the opinion that if the injury to appellee was due to anything more than the mere accidental running away of his horse, he was guilty of contributory negligence. The accident occurred in broad daylight. The day was bright and clear. The sun was shining. Appellee as he drove south on Ashland avenue "could see," as he says, "the railroad tracks a mile ahead. I looked west and east when I was at least half a block from the tracks; then I looked again when I was at the tower. There was nothing to obstruct my view along the tracks when I looked. * * * I knew I was approaching the railroad tracks and looked because I looked out for the train. * * * I was very near to the first track when I looked up at the tower. Was at least four or five feet away from the gate when I looked west along the tracks. Had already looked up the

tracks before that time, and then I looked again.    *    *    *
My sight and hearing were good."

The proof shows beyond all doubt or controversy that from the place where he was looking, when he was about four or five feet from the gate, he had a full and unobstructed view of appellant's tracks both before him and to the west from which the hand-car was coming.   He swears he did not see it, but this was a physical impossibility if he looked.   The car with the men on the top of it pumping the handles was right before him, a conspicuous object.   As said in C., P. & St. L. Ry. Co. v. DeFreitas, 109 Ill. App. 106 :  " The testimony of a witness to that which is physically impossible must be rejected as not in accordance with the truth of the matter even if not contradicted by the direct testimony of any other witness.   If a person looks he is supposed to look for the purpose of seeing, and if the object is in plain sight and he apparently looks but does not see it, it is manifest he does not do what he appears to do.   The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was unobstructed and where if he had properly exercised his sight he must have seen it.   C. & E. I. R. R. Co. v. Kirby, 86 Ill. App. 57; Artz v. R. R. Co., 34 Ia. 153; 2 Thompson on Negligence, sec. 1655."

The jury should have been instructed, as requested, to find appellant not guilty.   The judgment will be reversed with a finding of facts.

*Reversed.*