## Michigan Central Railroad Company v. Elizabeth Cudahy.

### Gen. No. 11,556.

1. CONTRIBUTORY NEGLIGENCE—*when established.* Held, from the
particular evidence in this case, that the plaintiff was guilty of con-
tributory negligence in going upon a railroad track upon which she
was struck and injured.

Action on the case for personal injuries. Appeal from the Superior
Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presid-
ing. Heard in the Branch Appellate Court at the October term,
1903. Reversed. Opinion filed March 21, 1905.

WINSTON, PAYNE & STRAWN, for appellant; F. S. WINS-
TON and RALPH M. SHAW, of counsel.

FRANCIS T. MURPHY, for appellee; EDWARD C. HIGGINS,
of counsel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of
the court.

This is an appeal from a judgment recovered by appellee
against appellant in an action on the case for personal in-
juries. The railroad yards of the Illinois Central Railroad
Company which were used by appellant, between Fourteenth
and Sixteenth streets, Chicago, extended from Indiana ave-
nue east to the lake. They were enclosed on the west by
a high stone wall and no public street or alley extended into
or across them. On the west side of the yards was a build-
ing in which was the linen room of the Pullman Company.
From a point a short distance north of this linen room a
plank walk extended east through the yards to the lake.
This walk crossed at a grade a large number of railroad
tracks. The first four of these tracks from the west were
tracks of appellant. The first three tracks from the west
were laid on a grade which began at the plank walk and
ascended as it ran south. These tracks curved slightly to
the west as they ran south and the first track ran into the
second at a point fifty feet south and the second track into
the third at a point one hundred and sixty feet south of
that walk. One hundred and twenty-five feet south of the

plank walk was an oil house, the east front of which was twenty-five feet west of the west rail of the first and thirty-five west of the west rail of the second track from the west. The distance between the second and the third tracks at the plank walk was at least twelve feet.

The plaintiff was in the service of the Pullman Company in said yards and in the course of her employment started to take certain articles from the linen room to a car which was on a track in the east side of the yards. She passed east on the plank walk and was struck by an engine running north on the third track from the west and injured. She testified that she saw a train going north on the north-bound Illinois Central track, the sixth track from the west, and stopped while that train passed. In her testimony in chief she said: "I waited until it (the Illinois Central train) had passed and when it passed I looked north and south again and I saw the road was clear, and I started to go on and I had only taken two or three steps when a lot of smoke came down on me, and at that moment I heard a shout and I turned toward the south and as I turned I saw an engine coming and I had time to take only one step back when I was struck." On her cross-examination she testified as follows: "Q. Now, how far did you have to go from the point where you started to get to the track upon which you were struck? A. About two or three feet, I think. Q. You had looked to the south just before you had stepped those two or three feet? A. Yes sir. Q. You had not seen any (engine)? A. No sir. Q. It was after you got on to the track that you say the smoke come down? A. Yes sir. * * * Q. How far could a person see from the point you were standing, down the track upon which the engine came that struck you? A. About 120 feet."

The day was bright and clear, the sun shining and the ground covered with snow. Plaintiff had been in the service in which she was at the time of the accident four years, had passed over the plank walk several times a day during that time and knew that "trains were going back and forth all day long across the walk."

The case turns upon the question whether the plaintiff was guilty of contributory negligence in going on to the track upon which she was struck and injured. As was said by us in C. & E. I. R. R. Co. v. Olson, 113 Ill. App., 320, "No inflexible rule can be laid down as to what constitutes contributory negligence on the part of a person who is struck by a railroad train when passing over the track upon which such train is moving. Each case depends upon its own circumstances." In I. C. R. R. Co. v. Batson, 81 Ill. App. 142, after a review of the authorities in this state, the court says: "These authorities and many others that might be cited warrant the statement that while a failure to look if a train is approaching is not negligence *per se,* it is negligence in fact if there are no conditions or circumstances which excuse looking. And a jury, without evidence of conditions or circumstances which excuse looking when looking would disclose the danger, is not warranted in finding that such failure to look is not negligence."

The statement of the plaintiff that when she stood on the walk either three feet or three steps west of the third track, the track upon which she was injured, she could not see the track further south than the oil house because the oil house obstructed the view, is inconsistent with the physical facts established by the evidence. The second track ran into the third track fifty feet south of the walk and from that point south there were on the grade but two tracks. The oil house was one hundred and twenty feet south of the walk and directly east of the oil house there were, on the grade, but two tracks. Of these the second from the west only led into or was connected with the track which was third from the west at the plank walk and the engine when east of the oil house was therefore upon the second track from the west. That track was thirty-five feet east from the oil house and from that point where plaintiff stood on the plank walk, the oil house could not obstruct the view of the track on which the engine ran for a distance of more than three hundred feet south from the plank walk.

Plaintiff also testified that just before she was struck by

the engine "a lot of smoke came down on me" but she admitted on cross-examination that she was on the track on which she was struck when this "smoke came down," and therefore it cannot be claimed that when she went upon that track her view of the track was obscured by smoke.

The testimony of the plaintiff that just before she started forward from the place where she stood while the Illinois Central train passed on the fourth track east of her, she looked both north and south and saw that the road was clear, must be rejected. The highest rate of speed of the engine stated by any witness was twelve miles per hour and the great preponderance of the evidence is that its speed was not greater than six miles per hour. The place where plaintiff stood was less than ten feet from the third track and during the time it would take her to pass over the track from that place the engine could not run more than sixty or eighty feet if its speed was twelve miles per hour. The view of the track was clear and unobstructed for a distance of more than three hundred feet and it follows, necessarily, that the engine was in plain view of the place where plaintiff stood at the time she started forward. "If a person looks he is supposed to look for the purpose of seeing; and if the object is in plain sight and he apparently looks but does not see it, it is manifest that he does not do what he appears to do. The law will not tolerate the absurdity of allowing a person to testify that he looked, but did not see the train, when the view was unobstructed, and where, if he had properly exercised his sight, he must have seen it." C. P. & St. L. Ry. Co. v. De Freitas, 109 Ill. App. 104-106.

Upon a careful examination of the record we fail to find in it either direct evidence, or evidence of facts, conditions or circumstances attending the accident from which the inference that the plaintiff was free from negligence which directly contributed to her injury can justly be drawn, and we are therefore led to the conclusion that she was guilty of such negligence.

There is no evidence to show that the servants of the defendant were guilty of wanton or wilful conduct or negli-

gence. The judgment of the Superior Court will be reversed with a finding of facts.

*Reversed.*