### Chicago, Rock Island & Pacific Railway Company v. Sol Hirsch, Conservator of Mary Busey, insane.

#### Gen. No. 4,751.

1. CONTRIBUTORY NEGLIGENCE—*when party injured guilty of.* Held, from the evidence in this case, that the plaintiff in going upon the tracks of the defendant company was guilty of such contributory negligence as precluded her right to recover.

Action in case for personal injuries. Appeal from the Circuit Court of Rock Island county; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1906. Reversed, with finding of facts. Opinion filed March 13, 1907. Rehearing denied and opinion modified April 17, 1907.

BENJAMIN S. CABLE and JACKSON, HURST & STAFFORD, for appellant.

WILLIAM A. MEESE and G. A. SHALLBERG, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought by appellee, Mary Busey, against appellant, the Chicago, Rock Island & Pacific Railway Company, in the Circuit Court of Rock Island county, to recover damages for injuries sustained by being struck by a locomotive belonging to appellant. The declaration was several times amended before and during the trial, and also after verdict. We shall assume that the declaration was sufficient to support a verdict for appellee. There was a trial before a jury, resulting in a verdict of $2,000 for appellee, a motion for a new trial overruled, judgment on the verdict, and this appeal.

The assignment of errors as originally filed in this court contained the various points stated in the motion for a new trial, but did not include the action of the trial court in overruling the motion for a new trial. By leave of this court, this additional error was afterwards assigned.

The evidence shows that Mary Busey, a colored janitress, in charge of two buildings in the city of Moline, was going from one to the other about seventhirty or eight o'clock on the morning of September 3, 1903, and in crossing appellant's southernmost track, walking north on the east side of Fifteenth street, was struck by the corner of the tender of an engine backing east and injured. Fifteenth street is about sixty-six feet wide and runs north and south at its intersection with Fourth avenue, the point of the accident. Fourth avenue runs east and west, has a sidewalk about ten feet wide on the south side, and is partially taken up with railroad tracks of appellant, the most southerly of which is thirty-five feet from its south line. Appellant has two main tracks in this street, and immediately north of these is the

658    APPELLATE COURTS OF ILLINOIS.

VOL. 132.]   Chicago, Rock Island & Pacific Ry. Co. v. Hirsch.

main track of the C., B. & Q. R. R. Co.; while still farther north are switch tracks, making in all eight tracks crossing Fifteenth street, leaving a large open space where a person walking north on Fifteenth street, after leaving the south line of Fourth avenue, can look east and west and across the tracks with no obstruction.

The only respect in which appellant was negligent was this: An ordinance of the city of Moline required gates at this crossing, and gates had been erected, but on July 26 preceding, had been broken down, and on the day of the accident to appellee had not been repaired and put in operation. The proof, however, showed that when this engine was approaching Fifteenth street, and half a block away, and from that time till the crossing was reached, and plaintiff was injured, a flagman was on the middle of this crossing flagging it for this engine.

The first question is, were the jury warranted in finding that appellee was then and there in the exercise of due care for her own safety?

Appellee testified that she was familiar with this crossing, having traveled across it many years going to and from her work; and also testified plainly, distinctly and unequivocally that she, at the time of the accident, knew that the gates had been broken down and that they had not been fixed. An effort was made to show that for over a month before this injury she had not gone across Fifteenth street, but she herself testified that she went across here at least once each day; and that, at the time of the accident, she knew that the gates were broken and that they were not in working order. Later, she said that she did not really know they were broken until after she was injured; but this cannot prevail over her previous repeated and explicit statement that she did know before the accident that the gates were broken and had not been repaired. The case is, therefore, not one where the party went forward in reliance upon the gates as

being in operation and believing, because they were up, that no trains were approaching. She also testified that she looked both ways and saw nothing. It was shown that she and a friend had been standing about forty feet south, at a store window, looking at the goods displayed, and had separated, and had then turned and walked back to each other and talked again, then separated again, and she started to cross the tracks. One witness testified that she went with her head down. The engine was backing east, running at a speed estimated at from four to eight miles per hour. In corroboration, it was shown that it was stopped within twenty feet of the place of the accident. The morning was clear, and it is plain from the testimony that the bell was ringing, and that it was rung automatically, being started by the engineer. Only one person says it was not ringing, and while several witnesses on each side remember nothing about the bell, there was testimony of witnesses on both sides who did hear it ring. The evidence is conflicting as to when the whistle was blown. There is positive proof that it was blown a hundred and twenty-five feet west of the west side of this street, and there is other testimony tending to show that it was blown as the engine entered upon the crossing and after the fireman discovered that plaintiff was approaching the crossing and stopping. It is possible that it was blown twice, but on that subject the evidence is uncertain.

In the case of C., P. & St. L. Ry. Co. v. DeFreitas, 109 Ill. App. 104, on page 106, the court says: "The testimony of a witness to that which is physically impossible must be rejected as not in accordance with the truth of the matter, even if not contradicted by the direct testimony of any other witness. If a person looks, he is supposed to look for the purpose of seeing; and if the object is in plain sight and he apparently looks, but does not see it, it is manifest he does not do what he appears to do. The law will not toler-

ate the absurdity of allowing a person to testify that he looked but did not see the train, when the view was unobstructed, and where, if he had properly exercised his sight, he must have seen it." C. & A. R. R. Co. v. Vremeister, 112 Ill. App. 346, and cases there cited.

We are of the opinion that no jury could rightfully find from this evidence that appellee was exercising due care for her own safety. On the contrary it is apparent that she was injured because of her own lack of ordinary care. Once, in her testimony, she stated that she did not look to the west, and an attempt was made to escape the natural conclusion as to this statement by claiming that her memory after the accident had become impaired, and that she did not quickly recollect. Her testimony in the record, however, appears to be that of an intelligent person in the right use of her faculties. She was offered and introduced as a witness on her own behalf, and we cannot be asked to believe that part of her testimony which is favorable to her case and to reject that which is unfavorable, by assuming that her mind had been affected by reason of the accident.

Since this case came before us a conservator has been appointed for appellee, who now comes and defends for her; but that fact furnishes no occasion to change our view of the evidence.

For the reasons herein expressed, the judgment of the lower court will be reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment of the court:

We find that at the time appellee was injured, and just prior thereto, she was not exercising ordinary care for her own safety, and that her negligence contributed to the injury complained of.