Steven Mena, Appellee, v. Chicago City Railway Company, Appellant.

Gen. No. 14,470.

CONTRIBUTORY NEGLIGENCE—*when person injured by traction company guilty of.* Held, under the evidence, that the plaintiff in this case, who was injured while attempting to cross street car tracks, was guilty of such contributory negligence as barred his recovery.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed with finding of fact. Opinion filed March 9, 1909. Rehearing denied March 23, 1909.

Statement by the Court. This is an appeal from a judgment of the Superior Court of Cook county in favor of appellee, Steven Mena, and against appellant, Chicago City Railway Company, for personal injuries.

It appears from the record that appellant, on February 5, 1904, owned and operated in the city of Chicago a street railway on Archer avenue which runs in a southwesterly direction from State street at about the corner of Nineteenth street. State street is a north and south street, and Nineteenth street runs east and west, its eastern terminus being the west line of State street. The Archer avenue street railway line turns into State street at about Nineteenth street and the cars on that line were there attached to the cable cars on appellant's State street line and brought down to the center of the city, and back again to Archer avenue, where they were detached and proceeded thence on Archer avenue, propelled by electric power.

Between six and seven o'clock in the evening of February 5, 1904, appellee was crossing the tracks of the Archer avenue line on the street crossing on the west side of State street, and was struck by a car of

appellant which was leaving State street and going into Archer avenue, and suffered injuries.

On the trial of the cause the jury returned a verdict finding appellant guilty and assessing appellee's damages at $3,000. After overruling a motion to set aside the verdict and grant a new trial, and a motion in arrest of judgment, the court entered judgment on the verdict.

WILLIAM J. HYNES, JOHN E. KEHOE and WATSON J. FERRY, for appellant; JOHN R. HARRINGTON, of counsel.

RICHOLSON & LEVY, for appellee; C. STUART BEATTIE, of counsel.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Several grounds are urged by appellant for a reversal of the judgment, but in the view we take of the case it is only necessary to consider one ground, namely, the contributory negligence of the plaintiff, appellee.

Mena, appellee, testified that he was going home between seven and eight o'clock in the evening. It was snowing, sleeting and cold, and there was a great amount of snow on the ground. He was going south on the west side of State street. When he got to the crossing of Nineteenth street he stood there and looked north and west and saw nothing. He then started to walk still going south, and when he was two feet from the first rail of the west bound track he again stopped and looked north and west. Before he got across the track the car struck him.

On cross-examination he said: "I rode south on the State street car to that corner and got off at Eighteenth street. I knew the drug store I wanted to go to was at Nineteenth street. It was a bad evening, snowing and raining at the time, and I got off

at Eighteenth and walked that block. I knew there were electric street cars turning off State street on Archer avenue. I was walking on the west sidewalk of State street from Eighteenth. I walked up to within about two feet of the street car track and stopped there. Two feet is just about one step. When I got up within one step of the street car track I knew that was the track on which cars would go out on Archer avenue; I knew that cars going out on Archer avenue on that track would come from the north on State street and would come around that corner. I looked west to see if any cars were coming and I looked north. I didn't see any cars coming from the west, and didn't see any coming from the north. I don't know how far I can see up that track to the north. I could see the street car tracks circle on State street and run up north on State; I could see that track for quite a distance. From where I was standing to go to the place where I was struck, I just had to take one step to reach the track, and then one or two steps to get between the rails."

The witness Alexander, called by appellee, testified that he was standing near the patrol box on Nineteenth street and Archer avenue about fifty, sixty or seventy yards from State street. When he first saw the car it was about forty or fifty feet from the man. When he first saw the man "he was over the first track, over the first railing of the Archer avenue track; he was on the walk that leads from Nineteenth, the corner, the Alhambra block—he was on the sidewalk; it is all brick there, you know." The witness further said that "when the car came around the fender of the car hit the man and knocked him down". The man who got hurt came from the north, going south towards the drug store and when witness first saw him he had already crossed the first rail and the car was then fifteen or twenty feet away from him.

The witness Heffron, called by appellee, testified that he saw an accident in February, 1904, at Archer

avenue and State street. He saw a man walking across the street, and saw a west-bound car hit him and push him twenty or twenty-five feet. He did not hear anything except the car rattling around the curve; "it was going around the curve at an ordinary rate of speed. The man was walking straight down State street." When witness first saw him he was about the center of Nineteenth street and walked about fifteen feet before he reached the track, and while he was going that fifteen feet he did not hasten or change the position of his head at all.

The witness Bailey, a bootblack, testified he was standing at the northwest corner of State and Nineteenth streets, and saw the man first when he was in the middle of the track and the car struck him. He further said that when he first saw the car the car and the man were about sixty feet apart and the car was going around the curve at a rapid gait.

The witness Robertson, called by the plaintiff, testified that he saw appellee and the car about the same time and that "they were just about coming together at that time; they were pretty close together when I first saw them. If he had made one more step he would have been out of the track. He was coming towards me, coming south. I was right on the corner, about fifty feet from him."

The testimony of the above witnesses is all the evidence in behalf of the plaintiff, appellee, touching the movements of the plaintiff and the car before the accident.

Appellant called the witness Hillyer, who testified that he was the conductor of the car in question. He saw appellee before he was struck, when he was about ten feet from the car track, walking south with his head down and his hands in his pockets. Witness "heard the bell, and heard someone holler. When I heard those sounds he came up to within a few feet of the track and kind of stopped, and started ahead again. When he started ahead the second time the

car was a few feet from him, and it ran after that about eight feet before it came to a stop."

The witness Julian was the motorman on the car. At the time of the trial he was in the city fire department. He testified that when he first saw the man that got hurt he "was about fifteen feet from the front of the car and about fifteen feet away from the track my car was running on. He was coming from the north, going south on State street at a good lively walk. My car was going about four miles an hour. From the time I first saw him there he walked along with his hands in his pockets and his head down, and kept on coming. I kept on going until he got within five feet of the car, and when I saw he was not going to stop, I shut off my power and put on my lever and fetched the car to a stop.   *   *   *   He walked right in front of me, and, of course, when I hit him he tripped over the corner of the fender and went to the left of the car.   *   *   *   The lights in my car and the headlight were all right; the inside lights were electric. As I was coming around the curve there, from the time I left the switch until this man was struck, I was ringing my gong."

Rinck, a witness called by appellant, testified that at the time of the accident he was about four feet away from where it happened. "I was waiting there to leave the car go by; I was crossing the street. I had stopped. This man when I first saw him, passed by me on my right side. As he passed me the car was about eight feet from him. This man passed by me, and I seen the car coming there, and I hollered at him just like that, 'Hey,' and somebody shouted from the car. He hesitated a minute and then he bumped right into it.   *   *   *   The car was lit up, and ran after it struck the man about ten feet."

From a consideration of this evidence we are of the opinion that it shows that appellee was guilty of negligence which directly contributed to produce the injury which he sustained. When appellee stated

in his testimony that he stopped when he was two feet north of the track and looked north to see if a car was approaching from that direction and saw no car, although he could see some distance north, and could see the track circle into State street and up that street, and that he was struck by the car when he had taken one or two steps, his testimony must be regarded as so inherently improbable as to make it unbelievable, and it must be rejected as not in accordance with the truth (C. & E. I. R. R. Co. v. Kirby, 86 Ill. App. 57; Bornscheuer v. Consolidated T. Co., 198 Pa. St. 332). In Stafford v. Electrical Ry. Co., 85 N. W. 1036, the Supreme Court of Wisconsin say of such testimony (p. 1046) : "The testimony of a person or any number of persons that he or they, when approaching a street car track with a view of crossing it, looked along the track for a coming car and did not see one, though a car was in plain sight and so near the point of observation as to render an attempt to cross the track in front of it dangerous, is inconsistent with all reasonable probabilities."

To the same effect are Fiddler v. N. Y. C. & H. R. R. Co., 71 N. Y. Supp. 721; Chicago, Peoria & St. Louis Ry. Co. v. DeFreitas, 109 Ill. App. 104; C. & A. R. R. Co. v. Vreimeister, 112 Ill. App. 346; Ill. Cent. R. R. Co. v. McMillion, 129 *id.* 27.

Appellee's testimony shows that before the accident his sight was good, and that he was familiar with the situation at the place of the accident and knew that the Archer avenue electric street cars turned off of State street on that track.

The testimony of Alexander presents an impossible situation. He places appellee between the rails of the track when he first saw him and the car at that moment fifteen or twenty feet away from him. It is evident on a moment's reflection that if the car was going eight or ten miles an hour, appellee would have had ample time to cross the tracks and be out of dan-

ger before the car reached the point where appellee crossed the tracks.

The witnesses Bailey and Robertson saw the car and appellee at the moment when the car struck appellee. The testimony of appellee's witnesses taken together, therefore, affords little light on the question of due care on his part, and does not strengthen his case on that point.

On the other hand, the testimony of the witnesses called by appellant shows clearly the negligence of appellee. The witness Rinck was in the best possible place for observing what happened, and appears to be an intelligent and disinterested witness. His testimony is corroborated in essential points by Julian and Hillyer. In our opinion these witnesses tell a consistent story in their testimony, and we can reach no other conclusion from all the testimony bearing upon the question of negligence of the parties than that appellee walked directly in front of the moving car and was guilty of negligence which directly contributed to the injury sustained by him, and he is not entitled under the law and the facts to recover against appellant.

The verdict was against the evidence, and the judgment must be reversed with a finding of fact.

*Reversed with finding of fact.*