Andrew Roth, Appellee, v. Wabash Railroad Company,
Appellant.

Gen. No. 5302.

CONTRIBUTORY NEGLIGENCE—*when person crossing tracks in buggy
guilty of.* To approach a crossing, knowing an engine is switching
in the neighborhood, in a closed buggy with the horses going at a
canter, and not to see the moving engine when there was a clear
space of fifty feet in front and 400 feet to the side, is not ordinary
care.

Action in case for personal injuries.   Appeal from the Circuit
Court of Livingston county; the Hon. GEORGE W. PATTON, Judge, pre-
siding.   Heard in this court at the October term, 1909.   Reversed
with finding of facts.   Opinion filed March 11, 1910.

R. S. McILDUFF and B. R. THOMPSON, for appellant;
JAMES L. MINNIS, of counsel.

A. C. NORTON and F. A. ORTMAN, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the
court.

This is an appeal from a judgment for $1,988.63 en-
tered on the verdict of a jury as compensation for per-
sonal injuries suffered by appellee as a result of al-
leged negligence of the appellant.   The case went to
the jury on the second and third counts of the declara-
tion.   The second count averred that the defendant
was negligent in backing an "engine" on the crossing
of a highway in the village of Sibley in Ford county
without ringing a bell or blowing a whistle, or keep-
ing a bell ringing or a whistle blowing until the cross-
ing was reached.   The third count avers that an ele-
vator and buildings on the east side of the east track
of the defendant and cars standing on the side tracks
obstructed the view so that the plaintiff could not see
an engine approaching from the south on the west
track, and then avers the same negligence as the other

count. Both counts aver that the plaintiff was in the exercise of care and diligence while riding in a buggy across said railroad.

The Wabash Railroad runs north and south through the village of Sibley in Ford county. The business part of the village is on a street parallel with the railroad on the east side of and about a block from the railroad. Illinois street runs east and west across the tracks of the railroad. The main railroad consists of a single track, which is the most westerly of all the tracks except one called the spur track, which does not figure in this case. Eight feet east of the main track, where it crosses Illinois street, is what is called the passing track; twenty-three feet east of the main track is the storage track; fifty-one feet east from the main track is the elevator track, which is not on the right of way of the railroad. Ohio street crosses the railroad 600 feet south of Illinois street; between Illinois and Ohio streets on the east side of the railroad is a park; just west of the elevator track and adjoining the south side of Illinois street is an elevator; adjoining the east side of the right of way on the north side of Illinois street is a coal shed. The railroad depot is on the west side of the main track 468 feet south of Illinois street near Ohio street, with a platform the north end of which is 386 feet from Illinois street. Illinois street is sixty-six feet wide and has a driveway sixteen feet wide planked across the railroad tracks in the center of the street, but there are no sidewalks on this street near or across the railroad. The elevator track at the north end connects with the storage track by a switch 700 feet north of Illinois street; the storage track connects with the passing track by a switch further north; and the passing track connects with the main track by a switch still further north. The south end of the storage track connects with the passing track by a switch about half way between Illinois and Ohio streets. The south end of the elevator track connects with the passing track by a

switch about 100 feet north of Ohio street and the south end of the passing track connects with the main track several hundred feet north of Ohio street.

The appellee, who is a farmer living nearly six miles from Sibley, on the 20th of February, 1907, drove to Sibley in a closed buggy with both back and side curtains fastened down. He reached Sibley somewhere between ten and eleven o'clock. He went direct to a saloon, where he met his brother-in-law and some other parties, stayed there a while and then went to a bank to attend to some business, and then back "to the saloon to see the boys." Later he and his brother-in-law went to a restaurant and had a lunch. The day was cold and blustery and the team had been left standing in the street unblanketed. A few minutes after 12 o'clock the appellee and one Thomas Diskin got into the buggy to go to a sale to which appellee had no intention of going when he left home, and drove west on Illinois street across the railroad, a locality appellee was familiar with "as he had been across this track hundreds of times before and knew there were three side tracks east of the main track." Appellee and Diskin testified that cars were standing on the elevator track on the south side of Illinois street within a few feet of the plank crossing and that cars were also standing on the storage track and the passing track, so that they were unable to see an engine approaching the street from the south on the main track. Appellee testified that when they came to the car "west of the elevator my horses were still on a trot, kind of canter like, and made a spurt as they went by the car;" that he saw a caboose standing some distance south either on the first or second tracks, says he looked north but didn't see any engine; that after he passed the box car he leaned forward so that he could look around the side curtains and continually leaned forward but didn't see anything until the engine was within ten feet of him; that when he was on the track east of the main track there

were cars to prevent his seeing the engine coming north; that he looked when he was on the third track from the east the last time but that his horses were not going slower than a canter; that he did not hear a bell or whistle; that he knew there was an engine there; and that he had seen two trains there a few minutes before he got in the buggy.

The engine struck the buggy on the main track and the appellee was thrown out and injured. The proof shows that just after twelve o'clock there were three trains in Sibley at the same time; one a through freight that came in from south and stood on the main track; a south bound train, a through freight, came in from the north and stood on the passing track; and a third train, a local freight, came from the south; the local freight when it came in left the main track, crossed the south ends of the passing track and the storage track onto the elevator track, went south to a box car by the coal house which was coupled to the front of the engine; it then backed up north across the switch from the elevator track to the storage track, and then went south on the storage track, pushing the box car which it had taken off the elevator track and pulling the local train; after the two trains had arrived from the south the north bound train left town going north on the main track and the south bound through freight went south from the passing track onto the main track and out of town. After the south bound through freight had left town, the local pulled south off the storage track onto the passing track until the caboose at the rear of the train was on the passing track opposite the north end of the platform. The engine of the local was uncoupled from the local train and then, pushing the box car ahead of it, went south on the passing track over the switch connecting with the main track onto the main track; then backed up north on the main track pulling the box car behind it past the depot and over Illinois street, where, as it was about to cross the street, the appellee drove in

Roth v. Wabash R. R. Co., 154 Ill. App. 315.

front of it and was injured. The proof as to the movements of the trains shows conclusively that there were no cars standing on the passing track or on the storage track south of Illinois street between that street and the depot where the caboose stood at the rear of the train, as the through south bound freight train went south on the passing track and the local freight passed south on the storage track. It is not possible there could have been any cars standing on either of those tracks south of Illinois street and north of the caboose. It is assigned for error among other things (1) that the clear preponderance of the evidence shows that there was no negligence proven on the part of the appellant, and (2) that no judgment can be sustained in favor of appellee because he was not in the exercise of due care. The proof with reference to negligence, the failure to ring the bell, is conflicting. Appellee and Diskin testify the bell was not ringing. A witness named Fred Lohmyer, who was at home eating dinner four or five blocks distant testified he did not hear the bell. Joe Sleezer a barber did not notice it or think about it at the time, but subsequently "thinking the matter over concluded the bell was not ringing." Fred Frederkehn was at dinner several blocks away from the crossing and didn't hear the bell ring. August Koehne, the president of the village, was on the street a block and a half east of the railroad and did not hear the bell. Apparently Roth, Diskin and Koehne are the only witnesses on the part of appellee who were in a position to know anything about the matter. For the appellant, the proof is that the engine had an automatic bell, which Spence, the engineer, testified he started ringing at the north end of the yard when they went in after the box car and that it was kept ringing; Hisel, the fireman, Carter, a brakeman, Doran, the conductor, all testify the bell was ringing and the section foreman and two of his men who were eating dinner in the depot testify positively that the bell was ringing when the engine passed the

depot. The agent who was busy about attending to his duties thinks it was ringing, but was not positive. It is very questionable whether the appellee proved negligence alleged by a preponderance of the evidence.

In reference to the question of due care on the part of appellee, he says that he did not hear nor see the engine until it was within ten feet of him; that he was driving in a covered buggy; that he had spent a couple of hours in and about saloons; admits having had from one to four drinks of liquor; that he had bought a pint of whiskey, the broken bottle of which was found in his pocket; he was driving at a canter, a team which had been left standing in the cold unblanketed upwards of two hours, hitched to a buggy with the side curtains down and on a cold and blustery day. To some of the railroad men the team appeared to be running away. There was fifty feet between the elevator track and the track the engine by which he was struck was on, with nothing intervening between the elevator track, the caboose on the passing track 400 feet to the north and the place he was injured. He says he leaned forward and looked when he was on the passing track after passing the car on the elevator track, and saw nothing. The engine moving north slowly was in plain sight in ample time for him to have stopped had he been using any care. To approach a crossing, knowing an engine is switching in the neighborhood, in a closed buggy with the horses going at a canter, and not to see the moving engine when there was a clear space of fifty feet in front and 400 feet to the side is not ordinary care. The law will not tolerate the absurdity of giving credit to a person who testifies he looked and did not see a moving locomotive in plain sight when the view was unobstructed, and where if he had looked he must have seen it. C. R. I. & P. Co. v. Jones, 135 Ill. App. 383; C. R. I. & P. Ry. Co. v. De Freitas, 109 Ill. App. 104. It is clear that the appellee did not look or use any care, but carelessly and

recklessly drove across the tracks where he was injured. Clearly the evidence fails to show that appellee was in the exercise of due care, but it does show that he was injured because of his own negligence and want of ordinary care. It is unnecessary to pass on the other questions raised. The judgment cannot be sustained, and it is therefore reversed with a finding of fact.

*Reversed with a finding of fact.*

Finding of fact: Plaintiff was injured because of his own want of ordinary care.