Arvle Sowers, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 34,604.

Opinion filed March 24, 1931.

VERNON W. FOSTER, FRED H. MONTGOMERY and HERBERT J. DEANY, for appellant; EDWARD C. CRAIG, of counsel.

GEORGE S. FOSTER and EDWARD J. GREEN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

By this appeal defendant seeks to reverse a judgment for $3,500, rendered against it after verdict on April 26, 1930, in an action for damages for personal injuries received by plaintiff on the morning of February 7, 1928, as the result of his automobile (which he was driving) being struck by the engine of defendant's southbound freight train at the Foster Street grade crossing in the Village of Ullin, Illinois.

The original declaration, filed August 6, 1928, consisted of four counts. The first charged general negligence in the operation of the train; the second negligence in failing to keep a proper lookout on the engine; the third negligence in failing to give to plaintiff any warning of the train's approach; and the fourth negligence in failing to cause the bell and the steam whistle on the engine to be rung and sounded as the train approached the crossing. On January 30, 1930, plaintiff by leave of court filed eight additional counts. In all twelve counts he averred that at and prior to the time of accident he was in the exercise of due care for his own safety. To all counts defendant pleaded the general issue.

In the first additional count plaintiff alleged in substance that about in the center of the Village of Ullin defendant used and maintained for its right of way four (4) railroad tracks, running north and south and crossing Foster Street, an east and west public highway; that the most westerly track is the "house" track, and next to the east the "passing" track, and

next the "southbound" main track, and next the "northbound" main track; that north of Foster Street and immediately east of the tracks is defendant's depot, and immediately west of the tracks are certain buildings; that on February 7, 1928, about 7 o'clock in the morning, the crossing "was shrouded in darkness in a heavy mist and fog"; that plaintiff was driving his automobile easterly in Foster Street and attempting to cross the tracks; that besides the mist and fog his view to the north was obstructed by the buildings immediately *west* of the tracks and by "a loaded coal car and a number of box cars," then standing on the "house" or "passing" tracks and north of and near to Foster Street; that just before reaching the tracks, and while slowly crossing said two tracks he "at all times kept a constant lookout and listened for the approach of a train," but neither saw nor heard one; that as he was about to cross the third or "southbound" track, defendant so negligently operated its engine and freight train southerly on said track, and at such a high and dangerous rate of speed, that a part of the engine struck the left front wheel of plaintiff's automobile, hurling it backwards and to the southwest with great force; and that thereby plaintiff suffered serious injuries and his automobile was damaged.

In the 2nd, 3rd, 4th and 5th additional counts similar allegations are made, except that the negligence severally charged is operating the train without warning to plaintiff, through mist and fog, without having it under proper control, and without ringing a bell or sounding a whistle. The 6th and 7th counts are based upon claimed violations of General Order No. 119 of the Illinois Commerce Commission in connection with certain municipal ordinances of the Village of Ullin. The 8th is based upon a claimed violation of General Order No. 123 of said Commission in connection with a certain statute.

On the trial plaintiff was the only witness called in his behalf as to the happening of the accident. He was taken to a hospital in an unconscious condition and did not recover consciousness for three days. He testified that at first he did not remember anything about the accident and that it was "perhaps *six months* before my memory came back as to how the accident happened." The present action was begun on July 23, 1928, less than six months after the accident. The only other eyewitnesses to the accident were the engineer of the locomotive, Jensen, and a young boy named Taube, called by defendant. Many other witnesses testified. Their testimony related largely to physical conditions at the time, the speed of the train, and whether or not a whistle was sounded and the bell kept ringing as the train approached the crossing. A map or plat, drawn to a scale, of the tracks, buildings, surroundings, etc., as well as several photographs of the scene of the accident taken shortly thereafter, were introduced in evidence. At the close of plaintiff's evidence and again at the close of all the evidence defendant's motions for a directed verdict in its favor were severally denied. After the verdict defendant's motion for a new trial was denied and the judgment entered. At the time of the hearing of the motion defendant contended, and here contends, that the verdict is manifestly against the weight of the evidence and particularly on the question of plaintiff's contributory negligence.

As to the physical conditions it appears that the four tracks and crossing were located as alleged in the first additional count; that one freight car for carrying coal was standing on the "house" track (most westerly) about 50 feet north of Foster Street; that there were no cars on the "passing" track; that of the buildings west of the "house" track and north of Foster Street, the most southerly was about 100 feet north of Foster Street; that defendant's depot, just

east of the tracks, was about 450 feet north of Foster Street; that it was daylight; that in daylight and under ordinary weather conditions a person, standing about in the center of Foster Street at a point 100 feet *west* of the "southbound" main track, could see an approaching train on that track 250 feet north of Foster Street, even though a coal car was standing on the "house" track in the position as above stated; that at a point 50 feet west of the "southbound" track he could see an approaching train about 570 feet away, north of Foster Street; and that at points 20 and 10 feet west of the "southbound" track he could see a train approaching on that track about 2,000 feet away, north of Foster Street. The distance from the west rail of the "house" track to the west rail of the "southbound" track is 26 feet, and the distance from the west rail of the "passing" track to the west rail of the "southbound" track is 14 feet.

It appears from plaintiff's testimony that Ullin is a village of about 650 inhabitants and he had resided there for about 39 years. His home was on Foster Street about one block west of the tracks. He was employed as a printer in the town of Mounds, a few miles distant from Ullin, to which place he usually went in his automobile early each morning, crossing the tracks at Foster Street, and returned each evening by the same route. He was thoroughly familiar with the crossing and with the passing and switching of trains, was an experienced driver of automobiles and his hearing and eyesight were good. On the morning in question he started from his home in his Ford touring car. There were old curtains on the left side of the car, which did not come together, and he could easily see to the north, in front, and also to the south. He had recently had the brakes on the car repaired and they were in good condition. He further testified in substance that the morning was cloudy and foggy and it had been raining; that he "could hardly see more

than two blocks''; that as he approached the tracks, about in the center of Foster Street, he was moving east at a speed not in excess of 10 miles per hour; that when about 50 feet from the tracks he stopped his car, and listened and looked both to the north and to the south and could neither hear nor see an approaching train, and he started again; that when he was about over the ''house'' track, and before he had reached the ''passing'' track, he again stopped his car and again listened and looked to the north and to the south, but neither heard nor saw any approaching train; that he then *could see* defendant's depot *east* of the tracks, which he estimated was about 500 feet away from where he then was; that he again started his car and slowly proceeded to cross the ''passing'' track, and continued to listen and look both to north and south; that suddenly, when he had about crossed the ''passing'' track, and was about six to eight feet from the ''southbound'' track, he heard a ''rumbling noise from the north,'' looked and saw defendant's train, then about even with the depot, rapidly approaching on the ''southbound'' track from the north; that his car then was moving at the rate of about four or five miles per hour; that he applied his brakes and ''used the reverse clutch,'' stopped the car, unsuccessfully tried to back it, and stood up and tried to get out of the car; that as he was doing so the head of the right cylinder of the locomotive struck the left front wheel of his car and it was thrown backwards and towards the southwest and he was violently thrown out and upon the ground; and that then he lost consciousness.

Defendant's witness, Taube, testified in substance that he saw the accident from a second floor window of the house where he lived, about 250 feet away; that he heard the whistle of the locomotive, saw a portion of the approaching train and saw ''Mr. Sower's automobile'' approach the tracks and attempt to cross

them; and that while doing so the automobile "did not stop," and the locomotive hit it.

Defendant's witness, Jensen, the engineer on the locomotive and of 28 years' experience, testified in substance that the locomotive was of the largest and latest improved type, equipped with a bell weighing about 100 pounds and which could be set to ring continuously, a standard whistle and automatic air brakes; that it was pulling 100 empty freight cars; that at the time of the accident the train was moving south at the rate of about 20 miles per hour; that before the locomotive had reached defendant's depot at Ullin the bell had been set to ring and did ring continuously up to the time of the accident and after; that just north of the depot there was a whistle post for the Foster Street crossing; that as he reached the post he sounded the whistle, two long and two short blasts, which were completed as he was passing the depot; that he first saw plaintiff's automobile just after he had passed the depot; that it was then moving slowly and crossing over the "house" track—the most westerly; that he thought it was going to stop, but it did not and continued to move slowly on to the "passing" track; that he "put his hand on the whistle" and, seeing that the automobile was still moving and getting too close to the "southbound" track, he "commenced blowing short blasts of the whistle" and applied the brakes; that the pilot of the locomotive hit the automobile and "pitched it clear over the 'passing' track on to the 'house' track," and plaintiff was thrown out and "his head hit the rail of the 'house' track"; that the train was stopped after about 20 or 25 of the cars were south of the crossing; that he (the witness) went back to the crossing, leaving the fireman (who had not witnessed the accident, being on the other side of the cab) in charge of the engine; that afterwards he (the witness) gave hand signals to the fireman to move forward and "cut the crossing"

and the fireman obeyed the signals. Defendant's witness, Kelly, the fireman, testified that from where the locomotive then stood (over 1,200 feet south of the crossing) he "plainly saw" the engineer's signals and acted accordingly, and that the bell on the engine was still ringing. Other evidence of defendant clearly showed that when plaintiff had driven his automobile as far east as upon the "house" track, and before he had reached the "passing" track, he had an unobstructed view of the "southbound" track to the north for a distance of over 1,500 feet from the crossing.

From all the evidence we are of the opinion that the jury's verdict, particularly on the question of plaintiff's contributory negligence, is manifestly against the weight of the evidence, that defendant's motion for a new trial should have been granted, and that the judgment appealed from should not be allowed to stand. In *Greenwald v. Baltimore & Ohio R. Co.,* 332 Ill. 627, 631-2, it is said: "It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence. . . . One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. . . . The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it." (See, also, *Schlauder v. Chicago & Southern Traction Co.,* 253 Ill. 154, 159; *Chicago, P. & St. L. Ry. Co. v. DeFreitas,* 109 Ill. App.

104, 106; *DeBow v. Cleveland, C., C. & St. L. Ry. Co.*, 245 Ill. App. 158, 164; *Goodman v. Chicago & E. I. Ry. Co.*, 248 Ill. App. 128, 135.)

For the reasons indicated the judgment of the superior court is reversed and the cause remanded.

*Reversed and remanded.*

SCANLAN, P. J., and KERNER, J., concur.