Madelon Price, Administratrix of the Estate of Theodore Price, Deceased, Appellee, v. Chicago and Eastern Illinois Railway Company, Appellant.

Gen. No. 36,072.

Opinion filed March 29, 1933.   Rehearing denied and opinion modified April 13, 1933.

EDWARD W. RAWLINS, for appellant; K. L. RICHMOND, of counsel.

JOSEPH D. RYAN and EDMUND M. SINNOTT, for appellee.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Madelon Price, administratrix, recovered a judgment in the superior court for $10,000 in a suit against the Chicago and Eastern Illinois Railway Company, a corporation, defendant, because of the death of Theodore Price which occurred on November 6, 1927, in the Village of Thornton, Cook county, Illinois.

The declaration consists of one count. This count charges that the defendant was operating a train over and along the railroad track in a southerly direction across a certain public highway in the Village of Thornton; that plaintiff's intestate was a passenger in an automobile which was being driven in an easterly direction in the Village of Thornton, over what was known as the Ridge road or Margaret street, and that he was at the time in the exercise of ordinary care for his own safety; that the defendant carelessly, negligently and improperly ran and operated its said train and by reason thereof it ran into and collided with the automobile in which plaintiff's intestate was riding, as a result of which he received injuries from which he died.

It appears that the accident happened about 12 o'clock noon on Sunday, November 6, 1927, and that the deceased was riding as a passenger in the front seat and to the right of the driver; the car was being driven in an easterly direction and the tracks of the defendant crossed the street at right angles. The automobile was a Packard car driven by Joseph Price, father of the deceased. In the back of the car were Josephine Price, his mother, Hugh Price, his brother, Madelon Price, his wife, and Marjorie Price, his daughter. According to these witnesses the car had stopped a block away from the point where the accident happened because of a stop-and-go sign at that point. From that point it then proceeded at the rate of from 15 to 20 miles an hour until it reached a point about 35 feet from the track of the defendant. At this point it had reduced its speed until the automobile was proceeding at the rate of about three or four miles an hour. There were signal lights on the highway at this particular point which were supposed to warn drivers of automobiles and pedestrians of the approach of trains. There were two tracks of the defendant at this

point, a north- and south-bound track. As the car in which plaintiff's intestate was riding approached the tracks, there was a train consisting of seven cars loaded with sand, an engine and a caboose proceeding over the west track in a southerly direction. The engine which was pulling this train was proceeding with the tender to the south and the cars were intended to be delivered at the plant of the Brownell Improvement Company, located from 500 to 1,000 feet south of the crossing.

Ridge road, or Margaret street as it was known in the village, was 66 feet in width from sidewalk line to sidewalk line and the middle of this highway was paved with either gravel or concrete 18 feet in width. The west or south-bound track, upon which the train was being operated, was straight for a distance of approximately 1,400 feet and beyond that there was a slight but gradual curve. West of the tracks, and upon the left-hand side of a driver approaching from the west and located on Ridge road, was a building known as the O-B Inn. Between this building and the west-bound track there was a road or alley approximately 30 feet in width, running in a northerly direction parallel to the tracks. A person standing in the center of Ridge road and 35 feet west of the track could see an approaching train when it reached Eleanor street which is 840 feet north. A person standing 25 feet west of the tracks and in the middle of Ridge road had an unobstructed view of the tracks for a distance of over 1,500 feet. At the time of the accident, 12 o'clock noon, it was bright and clear.

Joseph Price, the driver of the car, died after the accident and before the trial. The other witnesses, on behalf of the plaintiff, consisted of members of plaintiff's intestate's family and a man by the name of Behrens, who was being driven by his chauffeur along Ridge road in an easterly direction and whose car stopped at the crossing because of the approaching

train. These witnesses testified that the signal light was not operating and that there was no whistle blown by the engineer, nor bell rung; that they did not hear the approaching train and that the train was running at 35 to 40 miles an hour. On the other hand, a number of witnesses testified on behalf of the defendant that the signal light was working and that they could hear the train approaching. The engineer testified that he whistled for the crossing at Ridge road as well as for the crossing to the north.

Marjorie Price testified that the Packard car slowed down as they approached the tracks and when it was a few feet east of the building to the north it was going about two miles an hour. Hugh Price, brother of the deceased, testified that the automobile was going two or three miles an hour when the front of the machine was 30 or 40 feet west of the track; that the deceased said: "Step on it Pop, here comes a train."

Madelon Price testified that the Packard had attained its lowest speed at about 30 feet from the track; that at that time the lights were not flashing and the driver shifted his gears and started up and the deceased said, "All right, Pop," and that the driver increased the speed of the machine for the purpose of crossing the tracks.

Without considering the weight of the testimony as to whether or not the signal light was working, the bell ringing or whistle blown, we are at once confronted with the question as to whether or not the deceased at the time of the accident was exercising due care for his own safety. He was riding in the front seat with the driver of the automobile. Not only that, but it is apparent from the evidence that he knew that the train was coming and undertook to direct the movement of the vehicle in which he was a passenger and to advise the driver of the proper course to pursue. If the Packard car was proceeding at the rate of three or four miles an hour it could have been stopped within

a distance of a few feet. There was nothing to obstruct the view of the driver or the deceased at a point 25 feet from the south-bound track over which the defendant's train was running. *Sowers v. Illinois Cent. R. Co.*, 261 Ill. App. 63. Plaintiff's intestate had driven along this road prior to the accident and had crossed this track on other occasions and was evidently familiar with the surroundings. A railroad crossing is a dangerous place and one about to cross over such a place is bound to use care commensurate with the known danger. The fact that the lights were not flashing, if they were not, will not relieve one of the duty of using this care particularly where there is an ample opportunity to get a clear and unobstructed view of the approaching danger. *Dee v. City of Peru*, 343 Ill. 36; *Baltimore & O. R. Co. v. Goodman*, 275 U. S. 66; *Niederle v. Chicago Rapid Transit Co.*, 264 Ill. App. 347; *Mabel v. Cleveland C., C. & St. L. R. Co.*, 264 Ill. App. 532. One who has an unobstructed view of an approaching train owes a duty to himself to exercise care for his own safety and cannot rely upon the assumption that there will not be a violation of a statutory requirement such as operating signals or ringing bells. *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627; *Urban v. Pere Marquette R. Co.*, 266 Ill. App. 152. Where a passenger riding in an automobile has an opportunity of learning of approaching danger and has the opportunity to avoid it, he should for his own safety exercise due care and warn the driver of such danger. He cannot rely entirely upon the judgment of the driver of the car in which he is riding. *Dee v. City of Peru*, 343 Ill. 36; *Mabel v. Cleveland, C., C. & St. L. R. Co.*, 264 Ill. App. 532.

From all the evidence, and particularly on the question of contributory negligence on the part of the plaintiff, we are of the opinion the motion for a new

trial on behalf of the defendant should have been granted.

For the reasons stated in this opinion, the judgment of the superior court is reversed and cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HEBEL and HALL, JJ., concur.